CARIBBEAN ENGINEERING COMPANY, demandante y apelante, *v.* MUNICIPIO DE PONCE, demandado y apelado.

Núm. 8289.—*Sometido:* Noviembre 21, 1941. *Resuelto:* Febrero 25, 1942.

*A. Rivera Zayas* y *J. Velilla,* abogados de la apelante; *F. M. Susoni, Jr.,* abogado del apelado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

El Municipio de Ponce, con la cooperación de la Public Works Administration, anunció una subasta para el suministro e instalación de unos contadores y cajas de hierro fundido para el acueducto de dicha ciudad. La Caribbean Engineering Company, habiendo sido una de los licitadores, obtuvo la buena pro y, como consecuencia, celebró un contrato con el municipio para realizar dicho trabajo por la suma de $66,237. La cuestión en controversia en este caso surgió del hecho de que en las especificaciones, que se hicieron formar parte del contrato, el municipio incluyó 1,500 metros cúbicos de excavaciones como la cantidad *aproximada* que se necesitaría hacer, pero al realizar la obra la demandante tuvo que hacer 4247.33 m/c de excavaciones. En el contrato se fijó un precio unitario de 75 centavos el metro cúbico pero la demandante reclamó el pago del trabajo realizado en exceso de la cantidad estimada originalmente, más un 20 por ciento, a razón de $1.60 el metro cúbico o sea lo que según ella le costó realizar dicho trabajo. Igual sucedió con la partida de llaves de incorporación que se calcularon en las especificaciones en 1,000 a razón de $1 por cada llave y luego hubo que instalar 1,479, reclamando la demandante a razón de $1.50 por cada llave.

El municipio se negó a pagar la suma reclamada por la contratista pero sí le pagó de acuerdo con el precio unitario fijado en el contrato y entonces la Caribbean Engineering Company inició una acción de daños y perjuicios en la Corte de Distrito de Ponce reclamando la diferencia entre lo pagado por el municipio y el costo del trabajo adicional incurrido por la demandante en las dos partidas antes mencionadas o sea la suma total de $2,219.23. El caso fué sometido a la corte inferior mediante una extensa estipulación de hechos, a la que nos referiremos más adelante, y de la sentencia dictada declarando sin lugar la demanda con costas y honorarios de abogados es que la demandante estableció el presente recurso alegando que la corte inferior incurrió en error al dictar una sentencia incongruente con los hechos estipulados, al declarar sin lugar la demanda y al condenar a la demandante al pago de las cos-

tas y honorarios de abogado. La apelante discute los dos primeros errores conjuntamente y en la misma forma los resolveremos.

 El fundamento principal que tuvo la corte inferior para declarar sin lugar la demanda aparece expuesto en la relación del caso y opinión que dictó en apoyo de su sentencia, en esta forma:

"Aparece bien claro de lo que acabamos de transcribir que la demandante contratista, al entrar en el contrato referido con el Municipio de Ponce, *renunció a cualquier reclamación por daños y perjuicios con motivo de cualquier diferencia entre las cantidades de trabajo estimadas y las realmente realizadas.* (La instrucción número 7 forma parte del contrato).

"Con esto basta, a nuestro juicio, para declarar sin lugar la demanda de daños y perjuicios, porque 'las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse a tenor de los mismos' (Artículo 1044 del Código Civil, ed. de 1930)." (Subrayado de la corte inferior.)

Veamos si hubo renuncia. Como todos los documentos firmados en esta transacción están en el idioma inglés, al citar de ellos lo haremos, para mejor conveniencia, en dicho idioma. El contrato celebrado entre las partes expresamente provee que la invitación a los postores, la proposición, instrucciones a los postores, reglamentos de construcción y especificaciones formarían parte del contrato cuando dice:

"ARTICLE 1: *Statement of Work:* The contractor shall furnish all labor and materials, and perform all work required for the FURNISHING AND INSTALLATION OF WATER METERS AND CAST IRON BOXES in Ponce, Puerto Rico, for the consideration of sixty-six thousand two hundred and thirty-seven dollars ($66,237.00) in strict accordance with the invitation; bid; instructions to bidders; construction regulations; specifications entitled SPECIFICATIONS FOR THE FURNISHING AND INSTALLATION OF WATER METERS AND CAST IRON BOXES and the drawing mentioned in the specifications; *all which are made a part hereof.*" (Itálicas nuestras.)

Y el artículo 2 dice:

"ARTICLE 2: *Payments:* The OWNER agrees to pay the contractor for the complete work required by this contract at the prices agreed

upon in this contract. Such payments shall be made from funds received from the sale of bonds or otherwise, from the United States of America by way of grant."

En la primera instrucción a los postores se hizo constar lo siguiente:

"1, EXAMINATION OF SITE.

"Bidders *must* examine the site of the work in order to obtain full knowledge of difficulties that might arise in the execution of the work." (Itálicas nuestras.)

Y, en la instrucción 7 se dijo a los postores:

"7—PREPARATION OF BID.

"Bidders must submit with their bids one set of the Instructions to Bidders, Construction Regulations, and Specifications, *which shall be considered as forming part of their bids.*

"Forms furnished shall be used, and strict compliance is necessary with the requirements of the invitation and these instructions. Special care should be exercised in the preparation of bids.

*"Bidders must make their own estimates of the facilities and difficulties attending the execution of the proposed contract, including local conditions, uncertainty of weather and all other contingencies.*

"All blank spaces in the bid form shall be carefully filled in, no alterations or additions in the wording of the bid being permitted.

"All bids having any condition or limitation added by the bidders will be considered informal and may be rejected.

*"The estimated quantities of work* that appear in the Proposal Form *are only approximate and bidders must determine for themselves the quantities of work that will be required and they shall assume all risks as to any variation in the quantities of the different classes of work actually performed, and they shall not make any claim for damages or loss of profits because of any difference between the quantities of the various classes of work given in the estimate for the purpose of bidding and the quantities of work actually performed. The contractor's compensation will be computed upon the basis of the actual quantities in the completed work; whether they be more or less than the quantities listed in the Proposal Form."* (Itálicas nuestras.)

En el pliego de especificaciones se hizo constar, con el número 2, lo siguiente:

"2.—SCOPE OF WORK:—The extent and scope of work to be performed is described in these specifications, shown, noted or implied upon the accompanying drawings, supplemented by explanatory details, which will be furnished by the Owner, and may be stated as complete Furnishing and Installation of Water Meters and Cast-Iron Boxes for the Ponce Water Works.

"It is the intention of these specifications to describe definitely and fully the *character of all materials* and workmanship necessary to construct and completely finish the work described in accompanying sections of these specifications, and shall provide for and include all labor, transportation, tools, materials, machinery and equipment necessary." (Itálicas nuestras.)

Para el caso en que hubiera algún error en los documentos del contrato se hizo constar lo siguiente:

"7—ERRORS AND DISCREPANCIES:

"The contractor will not be allowed to take advantage of any errors or omissions which may occur in the documents of the contract.

"Should any errors or discrepancies in the drawing and specifications become apparent to the contractor during the progress of the work, he shall immediately call them to the attention of the OWNER or his representative whose decision, *approved by the PWA Representative for Puerto Rico, shall be final and binding.*" (Itálicas nuestras.)

Y se especificó el trabajo cubierto por el precio unitario así:

"8—WORK COVERED BY UNIT PRICE:

"The cost of furnishing all plant, labor and materials and the performance of all work necessary to complete each unit of work is understood to be comprised in the price paid for each unit."

En cuanto a trabajo extraordinario expresamente se convino lo siguiente:

"13—APPROVAL OF EXTRAS:

"The OWNER reserves the right to make, at any time, *changes in the plans and specifications* the same being subject to approval by the PWA Representative for Puerto Rico. No charge for any extra work or material will be allowed unless the same has been previously authorized in writing by the OWNER and approved by the PWA Representative for Puerto Rico.

*"In case that any changes in the plans and specifications may entail work not foreseen in the contract, this will be considered as extra work.'*

"The OWNER with the approval of the PWA Representative for Puerto Rico, reserves the right to enter into a written agreement with the contractor to execute *such extra work* at prices to be mutually agreed upon, or to have same carried out on a cost plus basis or by any other method that the OWNER may decide, subject to the approval of the PWA Representative for Puerto Rico.

"14.—CLAIMS AND PROTESTS:

"If the contractor considers any work required of him to be outside the requirements of the contract, or considers any record or ruling of the inspectors as unfair he shall ask for written instructions or decision immediately, and then file a written protest with the OWNER. Due consideration will be given to such protest, and the decision of the P.W.A. Representative for Puerto Rico *will be final."* (Itálicas nuestras.)

La demandante al hacer su postura en la subasta la tituló así:

"ESTIMATED QUANTITIES OF WORK AND MATERIALS (APPROXIMATE) FOR THE FURNISHING AND INSTALLATION OF WATER METERS AND CAST IRON BOXES FOR THE IMPROVEMENT TO THE PONCE WATER WORKS."

Y en ella hizo constar la siguiente:

"BID (PROPOSAL). In compliance with the above invitation and the advertisement for bids, *and subject to all the conditions thereof,* the undersigned offers and agrees, if this bid be accepted within sixty (60) days from the date of the opening, to furnish *all plant, labor and materials and perform all work required, at the unit prices stipulated in this PROPOSAL,* the total amount of the bid being sixty-six thousand two hundred thirty-seven dollars ($66,237), all within the time stipulated in paragraph 3 of the Specifications." (Itálicas nuestras.)

Y al final de su proposición dijo:

"The undersigned submits this bid with an entire knowledge of the kind, quality and *quantity* of the materials and workmanship required, and should it be accepted, will enter into a contract within fifteen (15) calendar days after being notified in writing of the acceptance of his bid." (Itálicas nuestras.)

De acuerdo con los términos del contrato todas estas disposiciones formaban parte del mismo. La controversia a resolverse en este caso es el alcance legal que tiene especialmente el último párrafo de la instrucción 7 supra, que traducido al castellano dice así:

"Las cantidades de trabajo estimadas que aparecen en 'The Proposal Form' son solamente *aproximadas* y los postores deben determinar *por sí mismos las cantidades que serán requeridas y ellos asumirán todos los riesgos en cuanto a cualquier variación en las cantidades de las diferentes clases de trabajo efectivamente realizado y (los postores) no harán reclamación alguna por daños o pérdidas de beneficios con motivo de cualquier diferencia entre las cantidades de las varias clases de trabajo dadas en el estimado para el propósito de la subasta y las cantidades de trabajo realmente llevadas a cabo.* La compensación del contratista será computada a base de las cantidades incluídas en la obra terminada, *aunque sean más o menos que las cantidades especificadas en el 'Proposal Form.'*"

Sostiene la apelante que el concepto de "aproximadas" que se hizo constar en dicho apartado 7, en cuanto a las cantidades de trabajo a realizar tenía, para las partes en este litigio, un sentido restringido a un 20 por ciento más de las cantidades fijadas en las especificaciones, de acuerdo con el apartado 9 de la estipulación sometida a la corte inferior para la resolución de este caso y que dice:

"9.—Que la demandante llamó la atención del municipio sobre tal exceso de excavaciones y al ser requerido para llevar a cabo este exceso al mismo precio unitario fijado en el contrato, hubo de negarse a dicho requerimiento y presentó su reclamación para que las excavaciones que excedieran de la cantidad consignada en la partida referida más un 20 por ciento se le pagaran como trabajo extra al precio de $1.60 el metro cúbico. El 20 por ciento consignado en exceso de la cantidad estimada de 1,500 metros cúbicos representa la regla y norma establecida en estas clases de contratos de obras públicas, a virtud de la cual el contratista está obligado a realizar un 20 por ciento más de la cantidad fijada en las especificaciones, al mismo precio unitario, establecido en el contrato."

Analizando la contención de la apelante, sin embargo, somos de opinión que por el apartado 9 de la estipulación, supra,

las partes no convinieron en que la palabra "aproximadas" significaba un 20 por ciento más de las cantidadess de trabajo fijadas en las especificaciones. Lo que las partes estipularon fué que la Caribbean Engineering Company reclamó el pago del trabajo que excediera de las cantidades fijadas en las especificaciones más un 20 por ciento. Se procedió entonces a decir qué representaba ese 20 por ciento, pero no se estipuló que la palabra "aproximadas" usadas en las especificaciones fuera equivalente a dicho 20 por ciento. Es más, aún asumiendo que ese fuera el alcance del apartado 9 de la estipulación, las partes, de acuerdo con las circunstancias especiales concurrentes en este contrato, no podrían limitar su alcance sin la intervención de la P.W.A. En el caso de autos, aún cuando las partes contratantes lo fueron la Caribbean Engineering Company y el Municipio de Ponce, el contrato estuvo supeditado en todo momento a la intervención y aprobación de la agencia federal "Public Works Administration". Así vemos que en el anuncio de subasta se hizo constar que: "No bid *will be accepted or rejected without prior authorization and approval by the P.W.A. Representative for Puerto Rico.*" Y en las instrucciones a los postores, encontramos lo siguiente: "3.— ... Contract will not be awarded until bids have been *examined and passed upon* by P.W.A. Representative for Puerto Rico ..." 4.—.... "The contract shall be supported by adequate surety or other bonds or security satisfactory to the *Administrator of the Federal Emergency Administration of Public Works,* ..." 14.—... "*The contract documents will be subject to the approval of the Representative for Puerto Rico of the Federal Emergency Administration of Public Works,* and also to the approval of the Commissioner of the Interior of Puerto Rico." (Itálicas nuestras.)

De manera que aun cuando la P.W.A. no es una parte en el contrato, éste no pudo haberse efectuado sin la intervención y aprobación de dicha agencia federal. Y es por esto que decimos que no habiéndose hecho constar en ninguno de

los documentos que formaban parte del contrato que la palabra "aproximadas" usada en la instrucción 7 supra, quedaba limitada a un 20 por ciento adicional a las cantidades de trabajo fijadas en las especificaciones, no pueden las partes, por estipulación, y sin la intervención de la P. W. A. darle dicha limitación.

Resolvemos que la palabra "aproximadas" no fué limitada al 20 por ciento definido en la estipulación, pues la definición allí contenida sólo se refiere a una norma de conducta adoptada por los ingenieros o contratistas en los contratos de obras públicas. Las cortes no pueden, por interpretación, extender el alcance de una estipulación para darle un efecto más allá de sus propios términos y de la intención de las partes. 60 C. J. 62, sec. 42. Es más, si aceptáramos la teoría de la apelante, ¿cuál era la finalidad del Municipió de Ponce al oponerse a la reclamación de la demandante en esta acción? Si había aceptado que la palabra "aproximadas" equivalía al 20 por ciento alegado por la demandante, no existiría controversia alguna entre las partes que requiriera ser resuelta por las cortes.

■■ La recurrente sostiene que las cantidades de trabajo fijadas en las especificaciones constituyen una garantía "warranty" por parte del Municipio de Ponce y que la base de la causa de acción radica en las erróneas afirmaciones contenidas en las especificaciones, pues en virtud de la mencionada garantía la apelante fué desviada y confundida y llevada a equivocarse al hacer su proposición. En su elaborado y extenso alegato cita insistentemente varios casos resueltos por el Tribunal Supremo de los Estados Unidos, a saber: *U. S.* v. *Utah, N. & C. Stage Company,* 199 U. S. 414; *Hollerbach* v. *U. S.,* 233 U. S. 165; *Christie* v. *U. S.,* 237 U. S. 234; *U. S.* v. *Spearin,* 248 U. S. 132 y *U. S.* v. *Atlantic Dredging Co.,* 253 U. S. 1. Hemos examinado cuidadosamente los hechos envueltos en estos casos y somos de opinión que lo en ellos resuelto por nuestro más alto tribunal no es aplicable a los hechos del caso de autos. Por el contrario, uno

de ellos, el de *Hollerbach* v. *U. S.,* demuestra cómo dicho tribunal distinguió los casos que caen dentro de la doctrina en los otros establecida y aquellos en que los hechos son como los que aparecen del caso que resolvemos.

Analicemos este caso. Hollerbach demandó a los Estados Unidos por daños sufridos en relación con un contrato para reparar una represa, alegando que dichos daños no se habrían ocasionado si los hechos expuestos en el párrafo 33 de las especificaciones unidas al contrato hubieran sido ciertos. La Corte de Reclamaciones, a base de lo resuelto en *Simpson* v. *U. S.,* 172 U. S. 372, falló el caso en contra del demandante y éste apeló a la Corte Suprema de los Estados Unidos. En la opinión de dicha corte se hace constar que la determinación de la controversia dependía de ciertas partes de las especificaciones y de las conclusiones de la Corte de Reclamaciones. Las especificaciones referidas, las que citaremos en inglés para mejor comparación con las del caso de autos, decían lo siguiente:

"20. It is understood and agreed that the *quantities* given are *approximate only,* and that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative, in the same. *Bidders, or their authorized agents, are expected to examine the maps and drawings in this office, which are open to their inspection, to visit the locality of the work, and to make their own estimates of the locality and difficulties attending the execution of the proposed contract, including local conditions, uncertainty of weather, and all other contingencies.*

" . . . . . . . .

"33. Work to be done.... The present dam, a wooden crib structure, is 528 feet long between abutments and about 52 feet wide at its base. The expected depth of concrete work is shown on the blue prints, but it may be made greater, as the condition of the old timber may render it necessary. The work shall be carried out in sections, generally from 50 to 100 feet long, and no more of the old work shall be torn out than can be rebuilt in a few days in case of necessity. All the exterior surfaces of the concrete shall be faced with the facing described in paragraph 59, which shall be placed before the concrete below has set, and shall be smoothly finished off.

*The dam is now backed for about 50 feet with broken stone, sawdust, and sediment to a height of within 2 or 3 feet of the crest, and it is expected that a cofferdam can be constructed with this stone,* after which it can be backed with sawdust or other material. The excavation behind the dam will be required to go to the bottom, and it is thought that a slope of 1 horizontal to 1.2 vertical will give ample room.

"70. Investigation. It is expected that each bidder will visit the site of this work, the office of the lockmaster, and the office of the local engineer and ascertain the nature of the work, the general character of the river as to floods and low water, and obtain the information necessary to enable him to make an intelligent proposal." (Itálicas nuestras.)

Las especificaciones 20 y 70 del caso de Hollerbach, supra, por su fraseología, equivalen, con ligeras diferencias, a las instrucciones 1 y 7, supra, del de autos y, la especificación 33 del mencionado caso, en su fondo, a la 2 del nuestro.

Las conclusiones de hecho a que llegó la Corte de Reclamaciones, en la parte pertinente, dicen así:

"As the contractors proceeded with the work of removing the material behind the dam it was found that said dam was not backed with broken stone, sawdust, and sediment as stated in paragraph 33 of the specifications, but that said backing was composed of a soft slushy sediment from a height of about 2 feet from the crest to an average depth of 7 feet, and below that to the bottom of the required excavation said dam was backed by cribwork of an average height of 4.3 feet consisting of sound logs filled with stones."

Y en el curso de su opinión la Corte de Reclamaciones dijo que si el párrafo 33 de las especificaciones, supra, fuera el único a considerar, constituiría una garantía del material que sostenía la represa, pero resolvió que las disposiciones preventivas de los párrafos 20 y 70 requerían que el demandante se informara de la condición del sostén de la represa y que por tanto el párrafo 33 no constituía una garantía "warranty", de acuerdo con lo resuelto en el caso de *Simp-*

*son* v. *U. S.*, supra. La Corte Suprema de los Estados Unidos distinguió este último caso y luego se expresó así:

"In this case the claimants rely upon the contract, read in the light of the findings of the Court of Claims. Turning to paragraphs 20 and 70 the Court of Claims justified its conclusion in that part of paragraph 20 which provides that 'quantities given are *approximately only,* and that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative, in the same. Bidders, or their authorized agents, are expected...to visit the locality of the work, and to make their own estimates,' etc. The term *'quantities'* as used in paragraph 20 may doubtless refer *to estimates of the amount of different kinds of work which are specified in the contract.* We do not see how it could control the statement of paragraph 33, definitely made, *as to the character of the material back of the dam.* Pertinent parts of the paragraphs referred to would seem to be those which required bidders or their authorized agents to investigate for themselves and to visit the locality of the work to ascertain its nature and make their own estimates thereof. The specifications attached to the contract set forth the work to be performed in great detail, as to its nature and character, and many particulars as to manner and extent of the work to be done, the removal of old timber and material, etc., the general character of the river as to floods and low water, etc., and the difficulties attending the execution of the contract, *and as to all these things the bidder was required by paragraphs 20 and 70 to make examination for himself and at his own peril.*

"In paragraph 33 the Government sets forth with particularity a description of the old dam, its length and width, and it was there added: 'The dam is now backed for about 50 feet with broken stone, sawdust and sediment to a height of within 2 or 3 feet of the crest,' etc. The specifications provided that the excavations behind the dam must be to the bottom. In the light of this specification, turn to the finding of fact, and we learn that the claimants, as they proceeded with the work, found that the dam 'was not backed with broken stone, sawdust and sediment as stated in paragraph 33 of the specifications,' and below seven feet from the top to the bottom there was a backing of cribbing of an average height of 4.3 feet of sound logs filled with stone. *Obviously, this made it much more expensive to do the work than if the representation inserted by the Government in the specifications of its own preparation had been true and only the character of material had been found which the specification unequivocally asserted was there.*

"A Government contract should be interpreted as are contracts between individuals, with a view to ascertaining the intention of the parties and to give it effect accordingly, if that can be done consistently with the terms of the instrument. In paragraph 33 the specifications spoke with certainty as to a part of the *conditions* to be encountered by the claimants. True the claimants might have penetrated the seven feet of soft slushy sediment by means which would have discovered the log cribwork filled with stones which was concealed below, but the specifications assured them *of the character of the material, a matter concerning which the Government might be presumed to speak with knowledge and authority.* We think this positive statement of the specifications must be taken as true and binding upon the government, and that upon it rather than upon the claimants must fall the loss resulting from such mistaken representations. We think it would be going quite too far to interpret the general language of the other paragraphs as requiring independent investigation of facts which the specifications furnished by the Government as a basis of the contract left in no doubt. If the Government wished to leave the matter open to the independent investigation of the claimants it might easily have omitted the specification as to the *character* of the filling back of the dam. In its positive assertion of the *nature of this much of the work it made a representation upon which the claimants had a right to rely without an investigation to prove its falsity.* See *United States* v. *Stage Co.*, 199 U. S. 414, 424." (Itálicas nuestras.)

Como hemos visto, el caso de Hollerbach resuelve fundamentalmente dos cuestiones, (1) que las especificaciones, en cuanto a las cantidades de trabajo, estaban sujetas a comprobación por el contratista ya que de acuerdo con los apartados 20 y 70 se habían dado solamente como aproximadas, y (2) que la especificación 33 en cuanto a la naturaleza del terreno, "character of material", detrás de la represa, era una garantía positiva por parte del Gobierno al contratista que éste no venía obligado a investigar de acuerdo con las especificaciones 20 y 70. Como consecuencia, la Corte Suprema revocó la decisión de la Corte de Reclamaciones y concedió los daños.

La misma doctrina fué aplicada en el caso de *U. S.* v. *Utah,* supra, en el que el contrato especificó que el contratista

tenía que traer y llevar la correspondencia a dos estaciones de correo y que podría tener que recorrer unas 6,718 millas adicionales al año y luego se le quiso obligar a realizar dicho trabajo para cuatro estaciones de correo con un recorrido adicional de 300,000 millas al año. Dijo la corte:

"El contratista tenía derecho a asumir que el gobierno sabía cuántas estaciones iban a recibir servicio; era un hecho conocido perfectamente por los agentes del gobierno y sobre el cual, en el anuncio de subasta, el gobierno hablaba con certeza. No creemos, cuando se hace una declaración tan inequívoca, y se prepara un documento para la información de los licitadores, que la declaración general de que el contratista tiene que hacer una inspección personal, y de que el gobierno no será responsable de ningún error, requiera una investigación independiente de un hecho de cuya existencia el gobierno no había dejado duda alguna."

En el caso de *Christie* v. *U. S.*, supra, la Corte Suprema volvió a hacer la misma distinción que había hecho en el de *Hollerbach*. Se imputaron tres errores a la Corte de Reclamaciones al resolver un caso de daños y perjuicios ocasionados a un contratista. Sólo dos de ellos son pertinentes a la acción que resolvemos, a saber: (1) al rehusar compensación adicional debido a la falsedad (misrepresentation) en las especificaciones en cuanto a los materiales a ser excavados, (2) al rehusar cierta compensación por material que hubo que excavar debido a un defecto en el ángulo de reposo *(angle of repose)* de la represa según se especificó. La Corte Suprema revocó la decisión en cuanto al primer error por entender que las especificaciones contenían "una engañosa falsedad del material (a excavar) que condujo a conclusiones erróneas" (*a deceptive representation of the material, and it misled*), pero la confirmó en cuanto al segundo porque en las especificaciones al referirse a las cantidades a ser excavadas se dijo que dependían de la determinación del ángulo de reposo y que eran sólo aproximadas y, por lo tanto, sólo cantidades estimadas.

No creemos necesario extender innecesariamente esta opinión analizando los demás casos citados por la recurrente

pues todos ellos presentan situaciones similares a las que hemos expuesto anteriormente. De todos ellos resulta claro que al de autos debe aplicarse la misma doctrina que estableció la Corte Suprema de los Estados Unidos en los de *Hollerbach* y *Christie,* supra. Las cantidades de trabajo estimadas e incluídas en las especificaciones se hizo constar en las instrucciones a los postores, que eran solamente aproximadas y que ellos debían determinar por sí mismos las cantidades realmente requeridas, asumiendo todos los riesgos en cuanto a cualquier variación en las mismas en las diferentes clases de trabajo efectivamente realizadas. No hubo ninguna garantía por parte del Municipio de Ponce a los contratistas que pudieran concurrir a la subasta en cuanto a la clase de trabajo o de material en relación con las excavaciones a realizar. Los casos citados por la recurrente no sólo no sostienen su contención sino que aplican la doctrina general, que en 44 C. J. 401, se expone así:

"Como se demostrará más adelante, se podrá obtener compensación por trabajo en exceso de, pero de la misma naturaleza general que el indicado por las especificaciones y planos, solamente al .tipo contractual y no como si fuera trabajo no previsto en el contrato (*extra work.*) ... Cuando los planos o especificaciones indican cierta cantidad de trabajo que hay que realizar, pero la cantidad así indicada es aproximada solamente y el contratista está obligado a hacer una inspección personal y asumir el riesgo de la cantidad y alcance del trabajo a realizar, el hecho de que una cantidad mayor de trabajo de la misma naturaleza general sea realmente necesaria, no lo autoriza a considerar dicho trabajo adicional como trabajo no previsto en el contrato (*extra work*), y obtener compensación por él a un tipo más alto que el precio contractual; él puede cobrar por dicho trabajo adicional como por trabajo regular al precio contractual cuando el precio es unitario a base de trabajo efectivamente realizado, pero no puede obtener compensación alguna cuando el precio contractual consiste de una suma fijada (*lump sum*)."

Esta regla ha sido aplicada en muchos casos, sobresaliendo entre ellos el de *Sullivan* v. *Sing Sing,* 122 N. Y. 389, 25 N. E. 366, citado por la corte inferior, por ser muy similar

al de autos. En las especificaciones del contrato objeto de interpretación en dicho caso, también se fijaron como aproximadas las cantidades del trabajo necesarias para la construcción de un puente. Resultó luego que dichas cantidades eran inexactas pues hubo que excavar 2,936 yardas de tierra cuando se había consignado solo 500. El contratista demandó cobrando el exceso como trabajo extraordinario y la Corte de Apelaciones de Nueva York, después de citar los hechos, dijo:

"Esto incluye necesariamente el concepto de que las cantidades indicadas son meramente aproximadas, ya que no sólo se dispone que dichas cantidades constituyen solamente un estimado como base para las posturas, sino que se toma la precaución adicional de estipular con relación a eso, que la junta de síndicos no se considera obligada por dichas cantidades, y que los contratistas tomarán aquellas medidas que consideren necesarias para comprobarlas. Sin considerar, por tanto, las otras cláusulas del contrato, parece que una interpretación razonable requiere que sostengamos que todo trabajo de un carácter general que haya sido incluído en las especificaciones, tiene que realizarse al precio contractual, aunque después resulte que la cantidad necesitada era mucho mayor que la estimada en las especificaciones."

De acuerdo con el apartado 7 de la estipulación sometida a la corte inferior, supra, es un hecho admitido por las partes que no existía un plano demostrativo del sitio donde estaban situadas las acometidas del acueducto, de manera que ni el Municipio de Ponce ni el contratista podían saber de antemano y con exactitud los metros cúbicos que tendrían que ser excavados. Es por eso que cuando en las especificaciones sólo se consignan cantidades aproximadas y se advierte al contratista de que debe investigar las condiciones del terreno en que va a realizar la obra y no lo hace o no puede hacerlo, asume el riesgo, que en el mismo contrato se hizo constar, de que las cantidades de trabajo estimadas resultaran menores de las necesitadas en realidad. El caso de *Leary* v. *City of Watervliet,* 118 N. E. 849, ratificado por la Corte de Apelaciones de New York en *Foundation Co.* v.

*State,* 135 N.E. 236 y citado con aprobación por la Corte
Suprema de Oregon en *Inland Const. Co.* v. *City of Pendle-
ton,* 242 P. 842 y en *Palmberg* v. *City of Astoria,* 228 P.
107 y por la de Kansas en *Scherrer* v. *State Highway Com-
mission,* 80 P. (2d) 1105, es también muy similar al que
resolvemos. Se contrató la construcción de dos represas y
al realizar la obra se tuvo que excavar en exceso de las
cantidades aproximadas calculadas en las especificaciones.
El contratista trató de cobrar el exceso como trabajo extra-
ordinario y la Corte de Apelaciones al confirmar a la corte
inferior dijo:

"De acuerdo con la evidencia ante nosotros, la licitación se basó
en cálculos aproximados solamente, y fué ofrecida y aceptada bajo
tales condiciones. Los pagos basados en dicha postura serían efec-
tuados de acuerdo con la cantidad de trabajo realizado, no importa
que dicha cantidad fuera mayor o menor que las cantidades indicadas
en el cálculo aproximado. . . .

"No se alega fraude o engaño por parte de la Comisión. El
contratista asume el riesgo de una variación en el estimado hecho
por la Comisión, del trabajo a realizar, debido a error o equivoca-
ción o cambios en el trabajo."

Aplicando la regla y la jurisprudencia citadas al caso de
autos, somos de opinión, de que el demandado, por los tér-
minos del contrato, no estaba obligado a pagar a la deman-
dante, como trabajo extraordinario y a un precio distinto al
fijado en el contrato, el exceso de las cantidades fijadas como
aproximadas en el propio contrato y, resolvemos además, que
la demandante, de acuerdo con los términos del contrato,
renunció a cobrar a otro tipo que no fuera el precio unitario
fijado, a menos que el representante de la P. W. A. así lo
aprobara, habiéndose consignado que su decisión sería final.
Aparece de los *exhibits* que acompañan a la estipulación
sometida a la corte inferior, que hubo un momento en que
el Alcalde de Ponce convino con la demandante en que debe-
ría pagársele el exceso como trabajo extraordinario, pero
ésta fué una actuación del Alcalde sin autoridad alguna para

ello, de acuerdo con los términos del contrato que en la especificación 13, supra, determinó qué trabajo era el que podía considerarse como de carácter extraordinario y cómo habría de pagarse, ambos requisitos sujetos a la aprobación del representante de la P. W. A. La carta del Alcalde a la demandante, por sí sola, no podía obligar al municipo demandado, ya que de los exhibits aparece, además, que sometido el asunto al Sr. Hardman, representante de la P. W. A., éste resolvió que el trabajo no era de carácter extraordinario y debía pagarse al precio unitario.

De acuerdo con el artículo 4 de nuestro Código Civil, los derechos concedidos por las leyes son renunciables, a no ser esta renuncia contra la ley, el interés o el orden público o en perjuicio de tercero, y disponiendo el artículo 1044 del mismo cuerpo legal que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos, la demandante Caribbean Engineering Company está obligada por los términos del contrato que suscribió. Es más, dicho contrato, aún asumiendo que la demandante no hubiera renunciado a la reclamación que ahora hace, en tanto en cuanto al pago de trabajo extraordinario se refiere, estaba condicionado a la aprobación final y definitiva del representante de la P. W. A. y como de acuerdo con el artículo 1067 del Código Civil, en las obligaciones condicionales la adquisición de los derechos dependerá del acontecimiento que constituya la condición, la demandante no adquirió ningún derecho pues nunca existió la aprobación a que nos hemos referido. Y no se diga, como lo hace la apelante en su alegato, que la P. W. A. era, de hecho, una parte contratante (si aceptáramos esto como cierto, toda la estipulación sometida a la corte inferior sería nula por no haber sido firmada por una de las partes, argumento que viene a robustecer lo que anteriormente hemos dicho en relación con el apartado 9 de la estipulación) y que, por lo tanto, no podía su representante ser árbitro en cuanto al pago del trabajo extra, pues entre

las reglas que gobiernan las obligaciones condicionales está la comprendida en el artículo 1068 del Código Civil que dice que "cuando el cumplimiento de la condición dependa . . . de la voluntad de un tercero, la obligación surtirá todos sus efectos con arreglo a las disposiciones de este Código." La condición de resolver qué trabajos deberán considerarse extraordinarios al efecto de su pago a un precio distinto del consignado en el contrato dependía, por convenio de las partes, de lo que resolviera el representante de la P. W. A. y se dió carácter final y definitivo a su resolución. No puede ahora, una de las partes, repudiar lo que expresamente convino, no habiéndose probado que al prestar su consentimiento haya intervenido error, violencia, intimidación o dolo.

■ No se cometieron los dos primeros errores y tampoco el tercero, pues repetidas veces hemos resuelto que no intervendremos con la discreción de las cortes inferiores al condenar al pago de honorarios de abogado, a menos que se demuestre un claro abuso de dicho poder, lo que no ocurre en este caso.

*Debe confirmarse la sentencia.*

El Juez Asociado Sr. Snyder no intervino.