FRANCISCO OLAZÁBAL, demandante-recurrente y recurrido, *v.* UNITED STATES FIDELITY & GUARANTY COMPANY, demandada-recurrida y recurrente; FLORENTINO CARTAGENA, tercero demandado y recurrido.

*Números:* R-66-254, R-66-255          *Resueltos:* 25 de febrero de 1975

*Félix Ochoteco, Jr.,* y *Ramos & Latoni,* abogados de Francisco Olazábal; *Juan Enrique Geigel, Guillermo Silva, Hernán G. Pesquera, Miguel A. Giménez Muñoz, Juan R. Zalduondo Viera, Ernesto F. Rodríguez Suris* y *Manuel E. Andreu García,* abogados de United States Fidelity & Guaranty Company; *Francisco Ponsa Feliu,* abogado de Florentino Cartagena.

El Juez Asociado Señor Martín emitió la opinión del Tribunal.

Francisco Olazábal formalizó, como dueño, un contrato con Florentino Cartagena mediante el cual éste se obligó como contratista a construir para aquél un edificio en el pueblo de Bayamón por la suma de $187,512.03. Dicho precio incluía los

materiales, mano de obra y dirección técnica, excluyendo las obras extras. El contratista se obligó a entregar el edificio terminado no más tarde de diez meses laborables contados desde el comienzo de la obra. El contrato contenía una cláusula penal por la que el contratista se obligaba a satisfacer al dueño la cantidad de $50.00 diarios por razón de mora si la obra se entregaba después de la fecha acordada. El contratista prestó una fianza para el cumplimiento de la obra (*Performance Bond*) expedida por United States Fidelity & Guaranty Company, aquí recurrente, por la suma de $93,756.02. El contrato de construcción es parte integrante del contrato de fianza. El contratista trabajó en la obra hasta que un día abandonó la misma. A esa fecha había expirado el término pactado de diez meses para la realización de la obra con una demora de 223 días laborables. El retraso quedó actualmente reducido a 193 días luego de efectuar determinados ajustes con motivo de unas obras adicionales, no incluidas en el contrato original, que tomaron 30 días laborables en completarse.

Así las cosas, Olazábal, dueño de la obra, requirió a la compañía fiadora recurrente que completara la construcción, pero al negarse ésta procedió el dueño a continuar la obra bajo la dirección del Ingeniero José A. Vázquez, quien había diseñado los planos del edificio y hasta ese momento había actuado, a nombre del dueño, en calidad de inspector de la obra. Cuando el Ingeniero Vázquez completó la construcción habían transcurrido 283 días laborables desde la fecha de terminación a la que se había obligado el contratista original.

El dueño de la obra radicó demanda contra la compañía fiadora reclamando responsabilidad bajo el contrato de fianza.

En su primera causa de acción esencialmente alegó lo ya relatado y el haber invertido en la terminación de la obra la suma de $23,164.46 en exceso del precio pactado con el contratista original. La reclamación excluye el importe de las obras adicionales realizadas fuera del contrato.

En su segunda causa de acción el demandante solicitó el pago de la suma de $14,650.00 en concepto de la penalidad por atraso fijada en el contrato de construcción a razón de $50.00 diarios por la demora de 293 días laborables transcurridos desde la fecha del incumplimiento hasta la fecha en que el Ingeniero Vázquez terminó la obra.

La compañía fiadora recurrente por su parte radicó demanda de tercero contra el contratista original aduciendo que de serle ella responsable al dueño demandante por cualquier suma, aquél sería a su vez responsable a la fiadora.

A su vez el contratista reconvencionó contra el dueño de la obra por obras extras, en adición a las pactadas, alegadamente realizadas en el edificio en cuestión montantes a $85,541.98.

Luego de admitida extensa prueba testifical y documental, el tribunal de instancia dictó sentencia el 27 de marzo de 1966. Declaró con lugar la demanda original y condenó a la fiadora a pagar al dueño de la obra: (1) la suma de $23,164.46, que representa el costo en que incurrió el dueño para terminar el edificio en exceso del precio originalmente convenido, y (2) la suma de $9,650.00 en concepto de penalidad por la demora de 193 días transcurridos desde la fecha en que la obra debió haber sido terminada según pactado hasta la fecha en que fue abandonada por el contratista original. No se concedió suma alguna por la demora habida a partir de la fecha en que fue abandonada la obra hasta que la misma fue terminada definitivamente. El tribunal declaró sin lugar la reclamación recíproca del contratista contra el dueño, pero no hizo determinación alguna sobre la demanda de tercero instada por la fiadora contra el contratista. Posteriormente, y luego de haber renunciado el juez sentenciador, otro juez de la misma sala declaró con lugar la demanda de tercero, ordenando al contratista a pagar a la fiadora las mismas cantidades que ésta fue condenada a satisfacer al dueño de la obra.

De dicha sentencia el dueño de la obra y la compañía fiadora han recurrido ante nos, quedando consolidados ambos recursos para ser resueltos conjuntamente. El contratista Cartagena, tercero demandado, falleció con posterioridad a la radicación de dichos recursos, y transcurridos más de dos años desde su muerte, las partes, a solicitud de la representación legal del fenecido Cartagena, se allanaron a la desestimación de ambos recursos en cuanto a él. Decretamos entonces el archivo en cuanto al contratista.

Examinaremos separadamente las dos causas de acción del dueño de la obra contra la compañía fiadora, a saber: (1) el costo adicional de $23,164.46 en que incurrió éste en la terminación de la obra en exceso del precio pactado; y (2) los daños líquidos a razón de $50.00 diarios fijados en el contrato de construcción como penalidad por demora en la ejecución de la obra.

I

La compañía fiadora no impugna la determinación que hizo el tribunal de instancia al efecto de que la obra costó $23,164.46 sobre el precio convenido, ya descontado el costo de las obras extras; pero sostiene haber quedado liberada y exonerada de las obligaciones impuestas por la fianza por haber el dueño alegadamente incumplido sustancialmente con las condiciones del contrato de construcción, cuyo contrato forma parte del de fianza. Alega específicamente la fiadora que el dueño incumplió los siguientes extremos del contrato de construcción: (1) al no exigir del contratista el estimado periódico de progreso requerido por el artículo 31 (a) del contrato; (2) al no exigir del contratista los estimados del trabajo realizado que conforme al artículo 31 (b) habrían de servir de base para el desembolso de los pagos parciales; (3) al no retener el 10% de las cantidades estimadas en las certificaciones periódicas de la obra según lo exige el artículo 32 (b); y (4) al hacer adelantos de dinero al contratista ascendentes en total

a aproximadamente $25,000 sin una constancia justificativa, y sin tomar las medidas para que estos anticipos fueran descontados de certificaciones posteriores con respecto a la obra realizada. El tribunal sentenciador no hizo ninguna determinación de hecho o de derecho en relación a este último punto levantado por la fiadora.

No hay controversia, y así lo acepta prácticamente el propio dueño en su alegato, en cuanto a que éste incumplió el contrato en lo relativo a la forma y cantidad de los pagos periódicos. De la evidencia documental que obra en autos y del testimonio oral surge que los adelantos totales que el dueño hizo al contratista ascienden a $28,252.10. En esa cantidad se encuentran adelantos montantes a $24,552.10 que no fueron deducidos de certificaciones subsiguientes. En cuanto a la omisión de retener el 10% del montante de las certificiones sometidas, se desprende que de las 46 certificaciones sometidas sólo en 8 de ellas se hizo la retención. De la suma de $170,173.96 pagada al contratista mediante certificaciones se omitió retener la suma de $12,808.83.

Entre los adelantos que no se dedujeron de certificaciones posteriores, montantes a $24,552.10 y las sumas dejadas de retener por el dueño ascendentes a $12,808.83 resulta que el dueño hizo pagos indebidos al contratista por un total de $37,360.93.

Veamos si el incumplimiento del contrato por parte del dueño exonera de responsabilidad a la fiadora bajo el contrato de fianza.

La disposición legal aplicable en este caso lo es el Art. 1751 del Código Civil, 1930, que lee como sigue:

"Los fiadores, aunque sean solidarios, quedan libres de su obligación *siempre que por algún hecho del acreedor no puedan quedar subrogados* en los derechos, hipotecas y privilegios del mismo." Código Civil, 1930, Art. 1751, 31 L.P.R.A. sec. 4956. (Énfasis suplido.)

454

■ Como regla general, la fiadora quedará liberada de responsabilidad frente al acreedor únicamente hasta el grado en que las actuaciones de éste hayan perjudicado los intereses o derechos de aquélla. Ya no rige la antigua doctrina elaborada en los tiempos de los fiadores gratuitos al efecto de que la menor violación del contrato por parte del dueño relevaba a la fiadora de responsabilidad *in toto*. Por ello hemos sostenido que: "El principio de que un fiador es un favorito del derecho no es de aplicación propiamente en el caso de una compañía organizada con el propósito expreso de actuar como fiadora mediante compensación." *Ulpiano Casal, Inc.* v. *Totty Mfg. Corp.*, 90 D.P.R. 739 (1964), pág. 745.

■ Conscientes como estamos de que de ordinario las fianzas ya no se prestan por mera liberalidad sino mediante paga, hemos abandonado la doctrina de interpretación restrictiva de las fianzas de construcción y en su lugar hemos adoptado una interpretación liberal. *Planned Credit of P.R., Inc.* v. *Page*, 103 D.P.R. 245 (1975); *Goss* v. *Structural Concrete Products*, 92 D.P.R. 391 (1965); *Jiménez y Salellas, Inc.* v. *Maryland Cas. Co.*, 92 D.P.R. 207 (1965); *Ulpiano Casal, Inc.* v. *Totty Mfg. Corp.*, supra; *A. L. Arsuaga, Inc.* v. *La Hood Const., Inc.*, 90 D.P.R. 104 (1964). Véanse también *Caribe Lumber* v. *Inter-Am. Builders*, 101 D.P.R. 458 (1973); *Cristy & Sánchez* v. *E.L.A.*, 84 D.P.R. 234 (1961); y Stearn's *Law of Suretyship*, Elder's Revision, 5th ed., pág. 123.

La doctrina española, en su interpretación de las disposiciones del Código Civil referentes a la liberación del fiador en los contratos de fianza, tiende a coincidir con los principios que refleja nuestra jurisprudencia.

Así Scaevola[1] citando a Planiol y Ripert expresa que: "El fiador no puede quedar liberado cuando no ha sufrido ningún perjuicio como consecuencia del acto que reprocha al

[1] Scaevola, *Código Civil*, Ed. 1953, T. 28, pág. 693.

acreedor." Y, añade: "Si el acto o negligencia reprochados al acreedor no han impedido más que parcialmente el reembolso del fiador, *éste sólo queda liberado en la medida del perjuicio sufrido.*" (Énfasis suplido.)

Tanto Scaevola como Manresa entienden además que la actuación del acreedor puede constituir una causa adicional de extinción de la fianza. ([2]) Manresa, al citar a Falcón, describe así dicha causa de extinción: "Cuando el acreedor cancela voluntariamente una hipoteca que estuviera constituida a su favor o renuncia libremente a un beneficio que la ley le concede, *o ejecuta otro hecho semejante por virtud del que haga más difícil el cobro de su crédito cambiando las condiciones del mismo* . . . ." (Bastardillas nuestras.)

Planiol y Ripert se refiere a los actos de los cuales el acreedor responde y de la consiguiente liberación del fiador, al expresar que:

"La liberación del fiador, si suponemos que el acreedor ha faltado a una obligación tácita, solo se produce un caso de culpa contractual. En términos generales, toda verdadera culpa por parte de éste, capaz de agravar las cargas del fiador, puede ser alegada por éste, contra la demanda de que es objeto . . . .

". . . . . . . .

"Con mayor razón el fiador . . . puede reprochar al acreedor los actos positivos por los que se hayan destruído o disminuído las garantías de su crédito." ([3])

Merece la pena recordar además lo que ha dicho el Tribunal Supremo de España a propósito del Art. 1852 del Código Civil español, idéntico al Art. 1751 del nuestro:

"Considerando que la liberación de los fiadores establecida por el artículo 1852 del Código de referencia está condicionada a que el acreedor realice algún hecho por el que no puedan aquéllos quedar subrogados en los derechos, hipotecas y privilegios de éste, de cuyas expresiones claramente se desprende que la ley

---

([2]) Scaevola, *op. cit.*, pág. 692; Manresa, *Comentarios al Código Civil Español*, 6ta. ed. 1973, T. 12, págs. 485 y 486.

([3]) Planiol y Ripert, *Derecho Civil Francés*, T. XI, págs. 915 y 916, Cultural S.A., Habana, 1940, Traducción de Mario Díaz Cruz.

exige actividad, acción, hecho, no bastando cualquier falta de diligencia o pasividad . . . ."

. . . no pudiendo admitirse en buena lógica que para guardar los intereses del fiador haya de prestar más diligencia que éste el acreedor quien confía en la solvencia del fiador tanto como en la del deudor." Sentencia de 7 de octubre de 1933, Revista General de Legislación y Jurisprudencia, III *Jurisprudencia Civil,* tomo 210, págs. 525 y 526.

Véanse además: Castán Tobeñas, *Derecho Civil Español, Común y Foral,* Tomo IV, 9na. ed., 1961, pág. 698; Muñoz, *Comentarios a los Códigos Civiles de España e Hispanoamérica,* ed. 1953, Título XIV, Cap. IV, págs. 930 *et seq.;* Ennecerus, *Tratado de Derecho Civil,* Tomo II, Parte 2 (Derecho de Obligaciones), 2da. ed., 1966, pág. 836.

En el presente caso el dueño permitió que el contratista no cumpliera con el requisito contractual de entregarle periódicamente estimados del progreso de la obra según exige el inciso (a) del artículo 31 del contrato de construcción ni los estimados periódicos exigidos por el inciso (b) del mismo artículo. A pesar de que el testimonio pericial demostró la utilidad de dichos estimados debemos concluir que tal omisión en el presente caso no fue perjudicial a la compañía fiadora. La prueba irrefutada demostró que el ingeniero Vázquez, quien confeccionó los planos de construcción y fue el inspector de la obra, estuvo constantemente presente en la obra y que los pagos que se hacían al contratista eran autorizados por él mediante certificaciones que sometía al dueño a medida que la obra se realizaba. En muchas ocasiones el contratista solicitó sumas de dinero que el ingeniero Vázquez consideró excesivas en proporción a la obra realizada, habiendo éste reducido las mismas para ajustarlas al estado de construcción de la obra. No tenemos duda de que las certificaciones aprobadas por el ingeniero Vázquez resultaban ser confiables.

Por el contrario, la fiadora sufrió perjuicios en la medida en que el dueño entregó al contratista anticipos no justificados, sin que luego los dedujera de certificaciones subsiguien-

tes. También se perjudicó la fiadora por la omisión del dueño al dejar de retener el 10% del montante de las certificaciones sometídasle. Ambos renglones de pagos indebidos ascienden a $37,360.93. Estos fueron de tal magnitud que alteraron considerablemente las condiciones del contrato de construcción cuyo cumplimiento aseguró la fiadora. El riesgo que asumió la fiadora al garantizar el contrato presumía unos controles sobre los pagos en proporción al progreso de la obra. Sin tales salvaguardas, la garantía del contrato se tornaría onerosa para la fiadora.

■ Es de rigor pues aplicar a la situación antes nos el principio doctrinal establecido por el Tribunal Supremo de España a los efectos de que cuando el acreedor nada hace para evitar que desaparezca la garantía que ofrece el deudor no puede reclamar el crédito al fiador que descansaba en aquella garantía. Sentencia de 9 de julio de 1908, Revista General de Legislación y Jurisprudencia, *Jurisprudencia Civil*, tomo 111, pág. 703.

■ Los adelantos indebidos hechos por el dueño no solo se hicieron en violación del contrato de construcción cuyo cumplimiento aseguró la fiadora sino que además perjudicaron sustancialmente a ésta, ya que dichos pagos indebidos excedieron las cantidades gastadas por el dueño para terminar la obra. Si el dueño hubiese hecho los pagos al contratista conforme al contrato, al abandonar el contratista la obra, hubiese habido dinero suficiente para terminar el trabajo sin excederse del precio estipulado. Concebimos la probabilidad de que el contratista hubiese abandonado la obra antes si el dueño le hubiese exigido acatamiento estricto del contrato, pero en ese caso la fiadora no se hubiese perjudicado, ya que el progreso de la obra hubiese ido a la par con los pagos hechos, aprovechándose así la fiadora de los fondos retenidos por el dueño para terminar la construcción. El resultado fue que al abandonar el contratista la obra ya había recibido el 90% del costo habiéndose construido aproximadamente el 80%

del edificio. (⁴) El claro incumplimiento del contrato de construcción por el dueño de la obra al hacer anticipos al contratista por obras no realizadas y al dejar de retener el por ciento pactado sobre los pagos efectuados, derrota la reclamación del dueño contra la fiadora, quedando ésta liberada de su obligación en cuanto al exceso pagado por el dueño para finalizar la obra.

## II

Consideremos ahora si debe aplicarse la penalidad contenida en el contrato de construcción por concepto del atraso habido en la obra. El tribunal de instancia determinó que el dueño tenía derecho a que se le pagara solamente por la dilación de 193 días transcurridos desde la fecha en que la obra debió haberse terminado hasta la fecha en que el contratista abandonó la misma, lo que a razón de $50.00 diarios asciende a $9,650.00. El dueño recurre ante nos aduciendo que la dilación a que tiene derecho es por los 293 días transcurridos desde que la obra debió haberse terminado hasta que efectivamente fue terminada por el dueño, lo que a razón de $50.00 diarios asciende a $14,650.00. Por su parte la fiadora arguye que el contrato no da derecho al dueño a la penalidad, excepto en el evento de que el contratista hubiere terminado la obra.

Examinemos el contrato de construcción al respecto. El artículo XII del mismo dispone en lo pertinente:

"Si el 'CONTRATISTA' rehusa o fracasa en la realización de la obra o en cualquier parte separada de la misma, con tal diligencia que asegure la terminación de ésta dentro del tiempo especificado, o dentro de la prórroga que se le conceda si así se deseare por el 'DUEÑO', o fracasara en realizar el trabajo dentro del término convenido, el 'DUEÑO' podrá previa notificación por escrito al 'CONTRATISTA', cancelarle y anularle el derecho de éste a proseguir realizando el trabajo o cualquier parte de éste en relación con la cual haya habido dilación. En tal caso,

---

(⁴) Véase declaración del Ingeniero José M. Canals, Transcripción de evidencia, 9 de nov. de 1964, págs. 30 y siguientes.

el 'DUEÑO' podrá hacerse cargo del trabajo hasta su termina-ción, por Contrato, o en cualquier otra forma, y el 'CONTRA-TISTA' y sus fiadores o garantizadores le serán responsables al 'DUEÑO' de cualquier exceso en el coste que se le ocasionare a dicho 'DUEÑO' por tal razón. Si el derecho del 'CONTRATISTA' a continuar realizando la obra es terminado o anulado en la forma anteriormente mencionada, el 'DUEÑO' podrá tomar pose-sión del trabajo y utilizar en la terminación del mismo aquellos materiales, aparatos, y plantas que se hallen en el predio donde se está realizando la construcción y que sean necesarios para la terminación de la misma. *Si el 'DUEÑO' no da por terminado el derecho del 'CONTRATISTA' de proceder con la obra hasta su total edificación, el 'CONTRATISTA' deberá continuar el trabajo, y en tal caso, no siendo posible de determinar los daños que se le originarían al 'DUEÑO' por tal dilación, el 'CON-TRATISTA' le pagará al 'DUEÑO' como daños fijos convenidos y líquidos a razón de $50.00 por cada día de calendario en que incurre en mora y hasta que el trabajo sea terminado y aceptado a su satisfacción por el 'DUEÑO',* y tal y como se especifica en los documentos del Contrato, *y los fiadores o garantizadores del 'CONTRATISTA' serán responsables por la penalidad anterior-mente acordada por cada día de calendario en que incurra en di-lación el 'CONTRATISTA' en la realización de la obra, . . . ."* (Énfasis suplido.)

El artículo transcrito resulta ser una copia casi literal del artículo 9 (⁵) de un modelo de contrato de construcción de

---

(⁵) El artículo 9, traducido al español dispone:

"*Demoras-Daños.*—Si el contratista rehusa o deja de proseguir la obra, o cualquier parte de la misma con tal diligencia que asegure su ter-minación dentro del tiempo indicado en el Artículo 1, o de cualquier pró-rroga al respecto, o deje de terminar dicha obra dentro del tiempo indicado, el Gobierno podrá mediante aviso por escrito dirigido al contratista, dar por terminado, el derecho de éste a proseguir con la obra o con la parte de ella objeto de la demora. En tal escrito, el Gobierno podrá hacerse cargo del trabajo y proseguir el mismo hasta su terminación mediante contrato o de otro modo, y el contratista y sus fiadores serán responsables al Gobierno por cualquier costo adicional en que incurra el Gobierno por tal motivo. Si el derecho del contratista a proseguir es así suspendido, el Gobierno podrá tomar posesión de y utilizar en la terminación de la obra aquellos materia-les, utensilios e instalaciones que esté en el lugar de la obra y que sean necesarios para ella. Si el Gobierno no da por terminado el derecho del

obras públicas que fue utilizado por el gobierno de Estados Unidos entre los años 1926 y 1935 (U.S. Standard Form, núm. 23). Véase *United States* v. *American Surety Co.*, 322 U.S. 96 (1944), esc. 1 y 3.

Una lectura del artículo XII del contrato en cuestión transcrito precedentemente revela que el derecho del dueño a recibir la penalidad por mora de $50.00 diarios está condicionado a que el dueño no dé por terminado el derecho del contratista a proseguir con la ejecución de la obra hasta su total edificación y a que el contratista continúe el trabajo. Esta ha sido la interpretación del Tribunal Supremo federal y de otros tribunales federales sobre la cláusula aludida y cláusulas similares. *United States* v. *American Surety Co.*, supra; *F. Herfarth Jr., Inc.* v. *Acker*, 177 F.2d 38 (1949); *United States* v. *Marietts Manufacturing Company*, 53 F.R.D. 390 (1971); *United States* v. *Cunningham*, 125 F.2d 28 (1941).

El Tribunal Supremo de los Estados Unidos y otros tribunales federales han interpretado la referida cláusula a los efectos de que la misma da una opción al gobierno o dueño, (1) de dar por terminado el contrato y proseguir con la construcción con el derecho a exigir el pago del exceso del costo, o (2) no dar por terminado el derecho del contratista a proseguir y permitirle que continúe el trabajo, reteniendo el dueño el derecho a los daños líquidos estipulados por mora. *United States* v. *American Surety*, supra; *United States* v. *Cunningham*, supra; *United States* v. *Maryland Casualty Co.*, supra.

■ Sin embargo, el presente caso plantea una situación diferente, ya que aquí el dueño no se tomó la iniciativa de dar por terminado el derecho del contratista a continuar la

---

contratista a proseguir la obra, el contratista continuará el trabajo, en cuyo caso los daños reales por la demora serán imposibles de determinar y en su lugar el contratista pagará al Gobierno como daños fijos, estipulados y líquidos por cada día calendario de demora, hasta la terminación o aceptación de la obra, la suma que se indica en las especificaciones o documentos adjuntos y el contratista y sus fiadores serán responsables por dicha suma . . . ."

obra, sino que el contratista la abandonó *motu proprio* cuando decidió que no podía continuar. (6) El contrato nada provee específicamente para esta eventualidad, por lo que tenemos que inferir la intención de las partes a base de la redacción de las demás cláusulas. Código Civil, Art. 1236 y 1237. (7) A esos efectos examinemos el artículo XI del referido contrato, el cual copiamos textualmente a continuación:

"ARTICULO XI
*Derecho del Dueño a Terminar la Obra*
". . . Si el 'CONTRATISTA' es adjudicado en quiebra voluntaria o involuntaria, o suspensión de pago; o hace una cesión de sus bienes para beneficio de sus acreedores; o le es nombrado un síndico por razón de su insolvencia, o por cualquier otro motivo; o si él persistente o repetidamente rehusa o falta de suplir obreros adiestrados (skilled workman), [*sic*] o los materiales adecuados; o si faltara al pronto pago a sus empleados u obreros o a sus sub-contratistas; o persistentemente desobedece instrucciones; o realiza actos que violen los documentos del contrato en algunos de sus extremos, incluyendo la falta de tener el material adecuado en el tiempo oportuno para usarse en la obra, entonces el 'DUEÑO', previa comunicación escrita con cinco (5) días de anticipación al 'CONTRATISTA', *y sin perjuicio de cualquier otro derecho o remedio que pueda tener el 'DUEÑO tanto en la obra como en relación con y contra el 'CONTRATISTA',* podrá declarar vencido y sin vigor ulterior el derecho del 'CONTRATISTA' de continuar realizando la obra, y no importa el estado de construcción en que ésta se halle. En tal caso, el 'DUEÑO' podrá hacerse cargo de la obra y proseguir la construcción de ésta hasta su terminación por Contrato o en cualquier otra forma, y el 'CONTRATISTA' y sus fiadores serán responsables al 'DUEÑO' de cualquier costo adicional ocasionado a dicho

---

(6) "El contratista estuvo trabajando en la obra hasta el día 2 de mayo de 1952 en que la abandonó ante la imposibilidad de su terminación . . . ." Determinación de hecho número 5 del tribunal sentenciador.

(7) "Si alguna cláusula de los contratos admitiere diversos sentidos, deberá entenderse en el más adecuado para que produzca efecto." Código Civil, 1930, Art. 1236, 31 L.P.R.A. sec. 3474.

"Las cláusulas de los contratos deberán interpretarse las unas por las otras, atribuyendo a las dudosas el sentido que resulte del conjunto de todas." Código Civil, 1930, Art. 1237, 31 L.P.R.A. sec. 3475.

'DUEÑO por razón a [*sic*] tener que hacerse él cargo de la continuación y terminación de la obra; y en este caso el 'DUEÑO' podrá tomar posesión y utilizar en la terminación de la obra aquellos materiales, aparatos, equipo y plantas que se hallen en el predio en el cual se está llevando a efecto la obra y que sean necesarios para su terminación. *Las disposiciones anteriormente consignadas son en adición, y no como una limitación, a los derechos que le corresponden al 'DUEÑO', a tenor de cualquiera otra disposición de los documentos del Contrato."* (Énfasis suplido.)

Como puede verse, este artículo confiere al dueño la prerrogativa de dar por terminado el derecho del contratista a continuar edificando, con el derecho a recuperar del contratista o sus fiadores lo que gastare dicho dueño en terminar el edificio en exceso del costo pactado. Nótese que se establece que este derecho del dueño será "en adición, y no como una limitación a los derechos que le corresponden al 'DUEÑO' a tenor de cualquiera otra disposición de los documentos del contrato." Una de esas otras disposiciones a las cuales hace referencia dicho artículo lo es la cláusula penal, que no es incompatible con lo establecido en el artículo XI y las primeras tres oraciones del XII. Nuestro Código Civil claramente establece que "Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos." Código Civil, 1930, Art. 1044.

▮ Los tribunales de justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato cuando dicho contrato es legal y válido y no contiene vicio alguno. *Matricardi* v. *Peñagarícano, Admor.,* 94 D.P.R. 1 (1967). Véanse además *Carro* v. *Cuevas,* 63 D.P.R. 739 (1944); *Caribbean Engineering Co.* v. *Municipio,* 60 D.P.R. 26 (1942); *Clausells* v. *Salas,* 51 D.P.R. 89 (1937); *Casalduc et al.* v. *La Compañía Trasatlántica de Hamburgo,* 9 D.P.R. 350, 369 (1905); *Esbri* v. *Sucesión Serrallés,* 3 D.P.R. 24 (1902). En el presente caso las partes incluyeron en el contrato de construcción una cláusula penal para la eventuali-

dad de que el contratista incurriese en mora. Habiendo sido el contrato de construcción incorporado al de fianza queda la fiadora obligada a responder de su incumplimiento. Código Civil de Puerto Rico, 1930, Art. 1054 y 1106. [8]

Sólo nos resta determinar si el dueño tiene derecho a recibir indemnización por la mora en que incurrió el contratista hasta el día en que éste abandonó la obra, o hasta el día en que la construcción fue terminada y entregada. El Tribunal Supremo federal ha resuelto, en un caso similar al de autos, que dicha cláusula penal sólo se aplica hasta el día en que el contratista deja de trabajar en la obra. Se trataba allí de una situación en que el gobierno federal, en su carácter de dueño de la obra, ejercitó su prerrogativa de cancelar el derecho del contratista a continuar edificando, y entregó la obra a otro contratista. *United States* v. *American Surety Co.*, supra.

En Puerto Rico, por otra parte, en un caso también muy similar al de autos en el cual en dueño lo era la Compañía de Fomento Industrial, resolvimos que "A"—dueño de la obra —tiene derecho a indemnización por mora, no desde la fecha en que venció la última prórroga concedida por "A" al primer contratista "B" hasta la fecha en que "A" rescindió el contrato de construcción, sino desde que venció la última prórroga concedida a "B" y hasta la fecha en que "C", el segundo contratista, debió haber completado la obra, sin incluir la prórroga que "A" posteriormente le concedió a "C". *Cía. de Fomento Industrial* v. *León*, 99 D.P.R. 633 (1971), pág. 640.

En el caso ante nos la situación es aún más favorable al dueño, porque (1) éste no obligó al contratista a abandonar la obra—lo que pudo haber hecho—sino que fue el propio contratista quien desistió de la misma; (2) de los autos surge que la fiadora fue notificada de la actuación del contratista, y pudiendo hacerse cargo de la obra se negó a hacerlo, por lo

---

[8] Para un análisis sobre las obligaciones con cláusula penal, véanse *R. C. Leasing* v. *Williams Int., Ltd.*, 103 D.P.R. 163 (1974); *Pueyo* v. *Real Hnos.*, 18 D.P.R. 862 (1912); *Iglesias* v. *Bolívar*, 1 D.P.R. 21 (1899).

que el dueño, en ánimo de mitigar los daños, no le quedó otra alternativa que hacerse cargo de la construcción; y (3) porque surge también de los autos que una vez estuvo la obra bajo el control del dueño, ésta se terminó con suma diligencia sin necesidad de conceder prórrogas adicionales al Ingeniero Vázquez, quien la dirigió hasta su terminación por cuenta del dueño.

■ Vista esta situación a la luz de las claras disposiciones del artículo XII del contrato transcrito precedentemente en esta opinión, que en lo aplicable establece que " . . . por tal dilación, el contratista le pagará al dueño como daños fijos, convenidos y líquidos a razón de $50.00 por cada día de calendario en que [incurra] en mora y *hasta que el trabajo sea terminado y aceptado a su satisfacción por el dueño . . . .*" (Énfasis suplido),(9) no vemos razón alguna que justifique alterar lo establecido en *Compañía de Fomento Industrial* v. *León,* supra. Por lo tanto, deben concederse al dueño los daños líquidos de indemnización por concepto de mora pactados, computados desde el día en que al contratista se le venció la última prórroga hasta el día en que se concluyó la obra. Los 283 días laborables que comprenden dicho lapso de tiempo, a razón de $50.00 diarios, arrojan un saldo de $14,150.00.

En vista de lo antedicho, *debe modificarse la sentencia recurrida a los efectos de dejar sin efecto la concesión de indemnización al dueño por los gastos en que incurrió en la terminación de la obra en exceso del precio pactado; y por otro lado deberá concederse un aumento en la indemnización por concepto de mora de $9,650.00 a $14,150.00.*

*Así modificada se confirmará dicha sentencia.*

El Juez Asociado Señor Dávila no intervino. El Juez Asociado Señor Díaz Cruz disintió en voto separado.

---

(9) "Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas . . . ." Código Civil, 1930, Art. 1233. 31 L.P.R.A. sec. 3471.

—o—

Voto disidente del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 25 de febrero de 1975

La indemnización por mora debe extenderse hasta el día en que el contratista abandonó la obra, (¹) siguiendo la regla de *United States* v. *American Surety Co.*, 322 U.S. 96 (1944). En este caso el Supremo Federal rehusa en sus propias palabras "reescribir el contrato" y con claro lenguaje sostiene lo convenido declarando: "Que pueda ser más conveniente extender la indemnización por daños a todo caso de demora, independientemente de que haya o no terminado la relación contractual, no es por supuesto factor relevante al interpretar y aplicar el claro lenguaje limitativo del contrato. . . . no podemos incluir lo que pudo ser pero no fue acordado." *ibid.*, a las págs. 101–102. En *Cía. de Fomento Industrial* v. *León*, 99 D.P.R. 633, 638 (1971), del que reclama autoridad la ponencia, la penalidad se extendió hasta la fecha en que el segundo contratista debió haber completado la obra porque el contrato allí disponía expresamente que el contratista original y su fiadora respondían a Fomento de daños fijos, acordados y liquidados por cada día de demora "hasta que la obra sea terminada a satisfacción de la Compañía de Fomento Industrial."

La opinión de mayoría aspira a sentar doctrina y no me parece justo ni correcto en derecho mantener un estado de mora corriendo por tiempo indefinido después del contratista haberse desligado de la obra, si como reconoce dicha opinión "el contrato nada provee específicamente para esta eventualidad." Para los efectos de ceñir la mora a un plazo cierto y determinable por la conducta de ambos contratantes, sin dejar

---

(¹) Contrario a lo que declara la opinión, no existe discrepancia doctrinal entre los casos de *United States* v. *American Surety Co.*, supra, y *Cía. de Fomento Industrial* v. *León*, 99 D.P.R. 633, 638 (1971). Ambos mantienen una prudente fidelidad a las respectivas fianzas que gobiernan sus hechos.

su duración al arbitrio del dueño, ninguna diferencia debe hacer que la separación del contratista se deba a su propia iniciativa o al requerimiento del dueño. La mora no debe ser sustituto para una penalidad por abandono de la obra cuando no se ha pactado expresamente dicha penalidad.

Percibo una inconsistencia estructural en la opinión que por un lado se abraza al contrato negando al dueño recuperación del costo de terminación de la obra, y por otro emprende un laborioso esfuerzo para llenar un gran vacío con disposiciones punitivas.

Salvo criterio mejor fundado, disiento de aquella parte de la opinión que reescribe la fianza y aumenta de $9,650 a $14,150 la responsabilidad de la fiadora por demora en la realización de la obra.