Cordero, Juez Ponente
*968 TEXTO COMPLETO DE LA SENTENCIA
I
El 1ro. de junio de 1968, Talavera y Commonwealth and International Mortgage Corporation (“Commonwealth”) otorgaron un contrato de Arrendamiento y Opción de Compra mediante el cual Talavera cedió en arrendamiento a Commonwealth un inmueble localizado en la Urbanización Reparto Fullana de Puerto Nuevo, Río Piedras (“Ave. Roosevelt”), por un término de 25 años y un canon anual de $8,000.00. En el contrato se estableció que en consideración al pago de $10,000.00, al finalizar el término del arrendamiento, Commonwealth se reservaba la opción de comprar el inmueble por la suma de $22,500.00. Dicho contrato de arrendamiento y opción de compra fue elevado a Escritura Pública Número 51 el 4 de junio de 1968. En 1973, el Banco adquirió por la suma de $86,493.00 la cesión del contrato suscrito por Commonwealth y Talavera. Dicha cesión consta en Escritura Pública Número 519 de 5 de noviembre de 1973. El 24 de enero de 1983, Talavera ratificó los términos del contrato en controversia mediante carta dirigida al Banco.
En mayo de 1985, Talavera muere y el Banco continuó pagando los cánones de arrendamiento a la Sucesión de Talavera (“Sucesión”) hasta su vencimiento en 1993. Poco antes de vencer el término de vigencia del arrendamiento, el Banco notificó a la Sucesión su intención de ejercer su derecho de opción a compra. Sin embargo, la Sucesión se negó a otorgar la correspondiente escritura de compraventa.
Así las cosas, el Banco presentó el 19 de mayo de 1994 demanda contra la Sucesión y cada uno de sus miembros reclamando el cumplimiento específico de la cláusula de opción a compra. La Sucesión oportunamente contestó la demanda y alegó que la cláusula de opción a compra era nula por ausencia de causa. Adujeron que el valor del solar presente excedía $600,000.00, y existía una exorbitante desproporción entre las prestaciones de las partes contratantes que aniquiló el contrato y justificaba su resolución o la intervención moderadora del TPI, por lo que solicitaron la aplicación al caso de la cláusula de rebus sic stantibus. A su vez, la Sucesión argumentó que ni la causante, ni ningún lego, podía precisar el desarrollo e incremento en valor del terreno por el período que comprende el contrato de arrendamiento. La Sucesión presentó reconvención contra el Banco alegando que los cánones de arrendamiento pagados debían ser modificados retroactivamente para ajustarse al incremento en el valor de la propiedad, a lo que se opuso el Banco.
Ambas partes solicitaron al TPI que resolviera sumariamente el caso por entender que no existe controversia sobre los hechos esenciales del mismo. No obstante, el TPI denegó dictar sentencia sumaria mediante Minuta de 5 de marzo de 1996, notificada el 13 de marzo de 1996. Luego de varios incidentes procesales, el Banco presentó una segunda moción de sentencia sumaria el 24 de septiembre de 1997. Esta vez y luego de celebrar vista a tales efectos, el TPI acogió la solicitud del Banco y emitió sentencia el 26 de enero de 1998, notificada el 29 de enero de 1998. Mediante la referida Sentencia, el TPI determinó que no existe controversia en cuento a los hechos antes señalados. No obstante, el foro recurrido entendió que los $22,500.00 que debía pagar el Banco por adquirir la propiedad en virtud de la cláusula de opción a compra, reflejaba una enorme diferencia con relación al valor actual del inmueble que se estimó entre $312,000.00 a $497,000.00. El TPI atribuyó que este hecho no se previno al momento de firmar el contrato en controversia debido a la diferencia en conocimientos mercantiles que Talavera tenía vis a vis los de Commonwealth o los del Banco. Así, el foro apelado concluyó que en el presente caso existían circunstancias de extrema y de excesiva onerosidad que justificaban su intervención moderadora. A esos efectos, el TPI intervino en su facultad *969 moderadora para que las partes ajusten el precio a uno justo y equivalente al valor en el mercado. Por tanto, el TPI indicó que:

“Si la parte demandante interesa adquirir la propiedad, se le concede a las partes un plazo de sesenta (60) días para iniciar y culminar negociaciones privadas, disponiéndose que de no llegar a un acuerdo por no ponerse de acuerdo en cuanto al valor de la propiedad, el Tribunal señalará una vista a los efectos. ”

Además, el TPI declaró Sin Lugar la reconvención presentada por la Sucesión.
Inconforme con esta determinación, el Banco acudió ante este Tribunal mediante escrito de apelación (KLAN-1998-00245). En síntesis, el Banco argumentó que el TPI erró al invocar su facultad moderadora y así excusar a la Sucesión de cumplir con las obligaciones que surgen del contrato suscrito por ambas partes. El 28 de junio de 1999, la Sucesión solicitó la desestimación de esta apelación alegando que la misma no fue debidamente notificada a dos de sus miembros. El 24 de agosto de 1999, el Banco replicó a la moción de desestimación presentada por la Sucesión y aceptó la falta de notificación a dichos miembros de la Sucesión; sin embargo, argumentó que la Sentencia tampoco fue debidamente notificada a estas personas, por lo que el recurso resulta prematuro hasta que el TPI notifique correctamente la Sentencia. Luego de múltiples trámites ordenados por este Tribunal y tras celebrarse vista ante el TPI para determinar si la referida Sentencia fue debidamente notificada, este Tribunal concluyó que “no habiéndose notificado a todas las partes la Sentencia emitida en el caso de marras, conforme a los antes expresado, el recurso ante nos fue presentado prematuramente añadimos, “el término para acudir ante nuestra consideración comenzará a decursar tan pronto el Tribunal de Primera Instancia notifique a todas las partes la constancia de la notificación enmendada dando a conocer que el Ledo. Irizarry y la Sra. Irizarry se dieron por notificados conforme a la Regla 65.3(d) y se archive en autos dicha enmienda.”. A tenor con ello, este Tribunal procedió a desestimar sin perjuicio el recurso KLAN-1998-00245 mediante Sentencia emitida el 13 de septiembre de 2000. La Sucesión solicitó oportunamente reconsideración de nuestra orden y la misma fue declarada No Ha Lugar el 18 de octubre de 2000, notificada el 27 de octubre de 2000. En el ínterin y mientras estaba pendiente la moción de reconsideración ante este Tribunal, el TPI notificó la Sentencia recurrida a todas las partes el 18 de octubre de 2000.
Así las cosas, el TPI, mediante Orden de 4 de enero de 2001, notificada el 23 de enero de 2001, dictó lo siguiente:

“El Tribunal se da por enterado y anula la notificación de la Sentencia realizada el 18 de octubre de 2000. Se ordena una nueva notificación tan pronto como se complete el trámite apelativo y se reciba el mandato. ”

La Sucesión presentó el 24 de mayo de 2001, “Moción Solicitando Notificación de la Sentencia” en la cual solicitó la notificación de la sentencia para que empiecen a correr los términos. Véase Apéndice a la pág. 450. El TPI notificó la Sentencia el 18 de junio de 2001. De ésta, el Banco presentó una “Moción de Reconsideración y/o Moción de Relevo de Sentencia (Reglas 47 y 49.2 de Procedimiento Civil)” el 29 de junio de 2001. Sin embargo, el TPI volvió a notificar la Sentencia a todas las partes el 6 de julio de 2001, por lo que el Banco reiteró su solicitud de reconsideración y relevo el 10 de julio de 2001. El escrito presentado por el Banco constituye realmente una moción de reconsideración que se entendió rechazada de plano por el TPI a tenor con lo dispuesto en la Regla 47 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, por lo que el Banco presentó su solicitud de revisión ante este Tribunal oportunamente el 18 de julio de 2001.
El Banco nos señaló que erró el TPI al dictar sentencia sumaria contra éste relevando a la Sucesión de cumplir con las obligaciones dimanantes del contrato suscrito por Talavera.
*970 II
En cuanto al aspecto jurisdiccional, la Sucesión compareció ante nos mediante “Moción Solicitando Desestimación del Recurso Apelativo” el 24 de septiembre de 2001 en la cual alegó que el Banco incluyó documentos adicionales que no fueron admitidos al récord al rechazarse de plano la solicitud de reconsideración presentada por el Banco. Este Tribunal declara dicha solicitud de desestimación sin lugar. Los documentos presentados forman parte del expediente ante el TPI independientemente de si el foro recurrido rechazara de plano la solicitud de reconsideración.
Posteriormente, la Sucesión presentó una “Segunda Moción de Desestimación” el 5 de octubre de 2001, por entender que al declarar este Tribunal que el caso KLAN-98-00245 era prematuro, la solicitud de reconsideración presentada por la Sucesión carecía de eficacia y no produjo efecto jurídico alguno. Así, la Sucesión sostiene que el término para acudir ante este Tribunal comenzó a decursar el 18 de octubre de 2000 cuando el TPI notificó por primera vez la Sentencia a todas las partes y mientras estaba pendiente una moción de reconsideración presentada por la Sucesión ante este Tribunal. Nada más lejos de la realidad.
Sabido es que la moción de reconsideración presentada ante este Tribunal interrumpe los términos para apelar o recurrir al Tribunal Supremo hasta que ésta sea resuelta definitivamente. Véase Regla 84, Reglamento del Tribunal de Circuito de Apelaciones y del Reglamento Transitorio del Tribunal de Apelaciones aprobado el 18 de noviembre de 2003. De otra parte, el mandato es la notificación oficial que le remite el tribunal apelativo al tribunal inferior para que se ejecute la sentencia dictada en apelación. Es el medio oficial del que se vale este Tribunal para comunicarle al tribunal apelado la disposición que se ha hecho de la sentencia objeto de revisión y de ordenarle el cumplimiento con los términos de la actuación del foro de superior jerarquía. Vaillant v. Santander, 147 D.P.R. 338, 350 (1998).
La remisión del mandato, luego de dictada la sentencia, tiene el efecto de ponerle punto final a los procedimientos del caso en revisión, removiéndolo de la jurisdicción del tribunal apelativo y devolviéndolo al foro de origen para que continúe con los procedimientos. Id. Cuando se ha instado un recurso de apelación, se ha expedido un auto de Certiorari o se ha dictado una orden de paralización de los procedimientos, el caso permanecerá bajo la jurisdicción del tribunal apelativo hasta tanto el mandato no haya sido emitido por la secretaría, luego de dictada la sentencia correspondiente. Por consiguiente, el foro recurrido se encuentra impedido para actuar sobre aquellas controversias contenidas en el recurso de apelación y, en consecuencia, cualquier determinación adelantada por el foro inferior antes de recibir el mandato es nula por carecer de jurisdicción sobre la materia. Id.
En el caso de autos, el mandato fue remitido por este Tribunal el 16 de enero de 2001, por tanto, el TPI no tenía facultad para emitir la Sentencia del 18 de octubre de 2000. Así, el 4 de enero de 2001, el TPI anuló esta notificación ya que se dio por enterado de que carecía de jurisdicción y notificó nuevamente la Sentencia objeto de revisión el 18 de junio de 2001. Por tanto, el Banco presentó su solicitud de reconsideración a tiempo y no procede desestimar el recurso ante nos.
III
El Código Civil de Puerto Rico no contiene una definición per sé de lo que es un contrato; mas bien, se limita en su Artículo 1206, 31 L.P.R.A. §3371, a informamos desde cuándo existe el mismo. Al efecto, dispone dicho precepto que el contrato “existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio.” Por su parte, sostiene el artículo 1207, 31 L.P.R.A. §3372 del Código Civil, que en términos de contratos, “los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan conveniente, siempre que no sean contrarias a las leyes, a la moral y al orden público. ” Luán Invest, v. Rexach Const. Co., 152 D.P.R. _ (2000), 2000 J.T.S. 196, a la pág. 550.
Obviamente, no hay contrato, sino cuando concurren los siguientes requisitos: (1) consentimiento de los *971 contratantes, (2) objeto cierto que sea materia del contrato, y (3) causa de la obligación que se establezca. Art. 1213, 31 L.P.R.A. §3391. Los contratos se perfeccionan por el mero consentimiento y, desde entonces, obligan no sólo al cumplimiento de lo expresamente pactado, sino también con todo aquéllo que sea conforme a la buena fe, el uso y la ley. Amador v. Conc. Igl. Univ. de Jesucristo, 150 D.P.R. _ (2000), 2000 J.T.S. 60, a la pág. 887.
Así, el Artículo 1210 del Código Civil, 31 L.P.R.A. §3375, dispone que los contratos, una vez perfeccionados, obligan no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza estén conforme con la buena fe, el uso y la ley.
Sabido es que nadie está obligado a contratar. Este principio del derecho de obligaciones tiene como consecuencia que las partes no están obligadas a proseguir con las negociaciones hasta perfeccionar el contrato, sino que están en libertad de contraer el vínculo o de retirarse, según convenga a sus mejores intereses. Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517, 526 (1982). Sin embargo, una vez las partes consientan a obligarse, los tribunales de justicia no pueden relevar a una parte de cumplir con su parte del contrato cuando dicho contrato es legal y válido y no contiene vicio alguno. Mercado, Quilinchini v. U.C.P.R., 143 D.P.R. 610, 627 (1997); Cervecería Corona v. Commonwealth Ins. Co., 115 D.P.R. 345, 351 (1984); Olazábal v. U.S. Fidelity, etc., 103 D.P.R. 448, 462 (1975); Matricardi v. Peñagarícano, Admor., 94 D.P.R. 1,4 (1967).
De otra parte, la cláusula rebus sic stantibus es la fórmula de mayor aceptación entre las variadas teorías sobre la revisión de contratos por alteración de las circunstancias. Casera Foods, Inc. v. E.L.A., 108 D.P.R. 850, 854 (1979). La misma representa un contrapeso a la rigidez y al absolutismo expuesto en la prédica de sostener en todo momento y circunstancia, la voluntad contractual de las partes simbolizada en la máxima "pacta sunt servanda". Id., a la pág. 855. Su aplicación se justifica sobre todo en momentos de crisis económica o cuando se trata de contratos de ejecución sucesiva y larga dimensión, donde el cambio de circunstancias, ajeno a la actuación y voluntad de las partes, puede hacer excesivamente onerosa para una de las partes la ejecución de lo convenido o puede convertir el contrato en objetivamente injusto. Casera Foods, Inc v. E.L.A, citando a Castán, Derecho Civil Español, Común y Floral, Tomo 3, pág. 544 (1974).
La cláusula de rebus sic stantibus permite que a manera de excepción y en circunstancias extraordinarias, se imponga un prudente y escrupuloso discernimiento judicial de moderación. Casera Foods, Inc v. E.L.A, supra, a la pág. 857. Es decir, que el tribunal, en su deber de procurar que se logre un resultado equitativo y justo, interfiere con la voluntad de las partes y modifica el negocio amoldándolo a las nuevas circunstancias. Id. págs. 855 y 857. Sin embargo, la jurisprudencia es clara al señalar que al ejercer su función moderadora, el tribunal debe tomar en cuenta que al ser un remedio en extremo excepcional, la aplicación de la doctrina rebus sic stantibus potencialmente puede desequilibrar la seguridad en el tráfico comercial. Id.
Los requisitos admitidos por la glosa para la aplicación de la doctrina rebus sic stantibus son: (1) el carácter imprevisible o normalmente imprevisible del acontecimiento que haya surgido; (2) que la ejecución del contrato resulte extremadamente difícil u onerosa, de tal modo que constituya para el deudor una lesión que no guarde proporción con la ventaja prevista para él en el contrato; (3) que el contrato no tenga un carácter aleatorio o de pura especulación con el que las partes quisieron prever en cierto modo la posibilidad del acontecimiento; (4) que no exista acción dolosa en ninguna de las partes, ya que los efectos de los supuestos delitos y cuasi delitos están especialmente predeterminados por ley; (5) que el contrato sea de tracto sucesivo o esté referido a un momento futuro, de modo que tenga cierta duración; (6) que la alteración de las circunstancias sea posterior a la celebración de contrato y que presente carácter de cierta permanencia; y (7) que exista petición de parte interesada. Casera Foods, Inc. v. E.L.A., supra, págs. 855-858. Para que sea factible dicha intervención moderadora, deben estar presentes todos los factores antes mencionados. Id., a la pág. 857.
*972 IV
En el caso de marras, existe un contrato de arrendamiento con opción a compra suscrito por Talavera y la Commonwealth, que luego fue cedido al Banco. Por el contrato con pacto de opción, una de las partes, concedente de la opción, atribuye a la otra, beneficiarla, un derecho que permite a esta última decidir, dentro de un determinado período de tiempo y unilateralmente, la celebración de un determinado contrato. II Puig Brutau, Derecho Civil, pág. 312 (1994). El contrato objeto de la controversia de autos es completamente válido y la cláusula de opción de compra es clara, por lo que las partes están obligadas a cumplir según lo pactado.
En cuanto a la doctrina rebus sic stantibus, no se justifica su aplicación a la controversia de autos, ya que falta uno de los factores, el carácter de imprevisibilidad. Una persona de razonable inteligencia puede o debió prever que en una isla con limitados recursos de espacio y en pleno desarrollo, el valor de las propiedades a través del tiempo aumenta. Más aún, es de todos conocidos que el desarrollo del área donde se encuentra ubicado el terreno es uno de alto crecimiento. Como mencionáramos antes, al contratar se asume el riesgo de que las circunstancias cambien y dentro del concepto de pacta sunt servanda, las partes tiene oportunidad suficiente para proteger sus intereses en la forma que estimen adecuada. Al momento de perfeccionarse el contrato y posteriormente al ratificar el mismo, Talavera tuvo oportunidad de considerar el aumento en valor de su propiedad y su efecto sobre el contrato de arrendamiento y opción de compra que había suscrito. Sin embargo, reiteró el mismo. Además, al momento de celebrarse el pacto, nadie ha probado que la renta era irrazonable o que no incluia consideración monetaria por la opción de compra.
En igual forma, la Sucesión nunca objetó el contrato mientras cobraba los cánones de arrendamiento pagados por el Banco. Ahora, cuando el Banco exigió del propietario el cumplimiento de la cláusula de opción a compra, éste se negó. Adujo que luego de veinticinco (25) años, hubo un incremento en el valor de la propiedad. Esta única razón no le da poder al TPI para modificar un contrato válido. El hecho del aumento en la propiedad, era una de las probabilidades previsible desde el momento que se otorgó el contrato. En todo caso, el valor de la propiedad se tenía que determinar al firmarse el contrato, salvo pacto en contrario. En virtud de todo lo anterior, la Sucesión está obligada a otorgar la correspondiente escritura de compraventa a favor del Banco a cambio del precio que claramente fue acordado en el contrato. No existe prueba de dolo o fraude ni que el consentimiento prestado estuviere viciado al momento-de-otorgarse el contrato.
V
Por los fundamentos antes expuestos, se revoca la determinación del TPI. En consecuencia, la Sucesión está obligada a firmar la escritura de compraventa de acuerdo a lo pactado por Talavera.
Lo acuerda y manda este Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General