ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| MARIBEL REYES RIVERA<br><br>APELANTE<br><br>v.<br><br>SUNNOVA ENERGY CORPORATION Y OTROS<br><br>APELADOS | KLAN202300625 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: HU2023CV00266<br><br>Sobre: Daños y perjuicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez

Ortiz Flores, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de agosto de 2023.

Comparece ante nosotros la señora Maribel Reyes Rivera (Sra. Reyes Rivera), quien impugna un dictamen denominado *Sentencia* emitido el 24 de mayo de 2023 y notificado al día siguiente por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). En su determinación, el TPI declaró con lugar el escrito judicial presentado por Sunnova Energy Corporation (Sunnova). En consecuencia, con el fin de que los litigantes agotaran la vía arbitral, desestimó sin perjuicio la *Demanda* incoada por la Sra. Reyes Rivera.

Del tracto procesal se desprende que el TPI no atendió la *Moción de desestimación* instada por el codemandado SolarTec, Inc. (SolarTec) ni la correspondiente *Moción en oposición a solicitud de desestimación* que interpuso la compareciente.[1] Sin embargo, la decisión judicial parcial que examinamos no cumplió con la formalidad estatuida en la Regla 42.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3. Así pues, el dictamen recurrido no adquirió la finalidad exigida para considerarse una sentencia revisable mediante un recurso de apelación. A tales efectos, acogemos el recurso presentado ante nuestra consideración como una

---

[1] Véanse, entradas 17, 23 y 26 en el expediente electrónico del caso de epígrafe en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Número Identificador

SEN2023_____

petición de *certiorari* aunque conserve la clasificación alfanumérica asignada por la Secretaría de este Tribunal. Asimismo, por los fundamentos que expondremos, anticipamos la expedición del auto discrecional y la revocación del dictamen.

**I**

La presente causa se inició el 18 de febrero de 2023, ocasión en que la Sra. Reyes Rivera instó una reclamación sobre daños y perjuicios contra Sunnova, SolarTec y varias partes con nombres desconocidos.[2] Alegó respecto a los hechos ocurridos lo siguiente:

.    .    .    .    .    .    .    .

8. Para el mes de marzo del año 2022, la Demandante y su hijo mayor de edad, Xavier Antongiorgi Reyes, visitaron la **residencia donde vivía la hermana y el cuñado de la Demandante. Propiedad del cuñado de la Demandante**.

9. El propósito de la visita era conseguir documentos del plan médico, seguro social, y cualquier otro documento que fuera pertinente para presentarlo en el hospital donde la hermana de la Demandante permanecía hospitalizada inconsciente en la Unidad de Intensivo.

10. En esta búsqueda, **el hijo de la Demandante encuentra documentos que contenían el nombre de la Sra. Maribel Reyes Rivera**, Demandante.

11. Al revisar los documentos, la Demandante se percata que los mismos son relacionados a un **supuesto contrato entre la Demandante y la Co-Demandada, Sunnova**.

12. Los documentos contenían **falsificada la firma de la Demandante**.

13. Según surge de los documentos, los mismos fueron **transmitidos mediante la plataforma digital "DocuSign"**.[3]

14. Esta situación le creó a la Demandante preocupación y ansiedad ya que, **jamás había recibido servicios de Sunnova. Tampoco había otorgado ningún tipo de contrato para ningún tipo de servicio con Sunnova**.

15. Del contrato se desprende que, se otorgó un contrato a Maribel Reyes Rivera (Demandante) a quien en el documento **se le adjudica la dirección física**: Samaria 926, Villa del Carmen en Ponce PR 00716. **Dirección que no es de la Demandante**.

16. El documento **identifica a la Demandante como la propietaria de la residencia** en esa dirección en Ponce. Aunque **la Demandante reside en Hatillo**, Puerto Rico y no tiene bienes inmuebles en Ponce.

17. El documento identifica también como copropietario a: Antonio Loza Sardiñas (cuñado de la Demandante, QEPD).

---

[2] Apéndice, págs. 25-32.

[3] DocuSign es una empresa que se utiliza para firmar documentos electrónicamente de conformidad con el "U.S. Electronic Signature in Global and National Commerce Act" y cuenta con procedimientos para cumplir con el "Uniform Electronic Transactions Act".

> Esto a pesar de que la **Demandante nunca ha sido co-dueña de propiedad alguna en conjunto con el señor Loza**.
>
> 18. **El documento registra de manera falsificada las iniciales y firma de la Demandante**. Iniciales y firma que está jamás plasmó de forma alguna en esos documentos. (Énfasis nuestro.)
>
> .        .        .        .        .        .        .        .

La Sra. Reyes Rivera adujo haber sufrido angustias mentales al estar expuesta a acosadoras gestiones de cobro por una cuenta presuntamente ilegítima y ver afectado su historial crediticio. Imputó negligencia a Sunnova al no adoptar precauciones para evitar vincularla de manera incorrecta como cliente y firmante del contrato. En consideración a sus daños, solicitó una indemnización de $500,000, más gastos y honorarios.

El 31 de marzo de 2023, Sunnova presentó una moción mediante la cual solicitó la desestimación sin perjuicio de la causa y el referido al procedimiento de arbitraje.[4] También arguyó falta de parte indispensable, en alusión al señor Antonio Loza Sardiñas y a la hermana de la Sra. Reyes Rivera. En lo que nos compete, Sunnova sostuvo que la Sra. Reyes Rivera "suscribió" el *Contrato de Compra de Energía o PPA*, posteriormente enmendado. Planteó que el acuerdo en cuestión comprendía una cláusula de arbitraje, en la cual las partes consintieron resolver cualquier controversia, reclamación o desacuerdo mediante el procedimiento de arbitraje. Añadió que el *Contrato* incluía también la renuncia del derecho de ventilar controversias contractuales ante los tribunales de justicia. Argumentó que, de conformidad con la doctrina de separabilidad, las cláusulas de arbitraje son separables e independientes del *Contrato*. Razonó que, cualquier reclamo para anular un contrato en el que se convino un pacto de arbitraje, descansaba en el árbitro la evaluación de la validez del acuerdo y la resolución de toda disputa que surgiera de la relación contractual.[5]

---

[4] Apéndice, págs. 33-44, con anejos a las págs. 45-70.

[5] Cabe señalar que Sunnova expuso ciertos antecedentes de la disputa, ventilados ante el Departamento de Asuntos del Consumidor (DACo). La versión ofrecida fue confrontada por la Sra. Reyes Rivera. Ahora, debemos aclarar que del expediente electrónico del

La Sra. Reyes Rivera se opuso al pedimento.[6] Reiteró que su causa de acción versaba sobre la falsificación ilegal de su firma. Por ende, aseveró que las cláusulas contractuales, incluyendo las concernientes al arbitraje, no la obligaban, puesto que nunca firmó el documento por la plataforma DocuSign. Apuntó lo siguiente:

.        .        .        .        .        .        .        .

8. **Antes de atender cualquier controversia sobre la cláusula de arbitraje** que es parte del contrato objeto de esta controversia, **es importante que este Honorable Tribunal celebre una vista evidenciaria** en la cual pueda estar en posición de **resolver la alegación firme y expresa de la Demandante cuando reclama jamás haber firmado contrato alguno con Sunnova Energy**. De hecho, la reclamación principal de esta causa de acción es precisamente la falsificación de la firma de la Demandante en dicho contrato que tuvo el efecto de acarrear daños adicionales contra la Demandante. (Énfasis nuestro.)

.        .        .        .        .        .        .        .

En apoyo a su planteamiento, citó al Tribunal Supremo de Estados Unidos en el caso *AT&T Techs. V. Communs. Workers of Am.*, 475 US 643 (1986), en el que se estableció que corresponde al tribunal interpretar el acuerdo arbitral y adjudicar si las partes tenían o no la intención de someter las reclamaciones a dicho proceso. De manera persuasiva, citó el caso *Fabian v. Renovate America, Inc.*, 42 Cal.App.5th 1062 (2019). A la luz de este, enfatizó que no se puede obligar a un proceso de arbitraje, cuando una parte no ha demostrado la legitimidad de la firma plasmada en el acuerdo contractual que contiene la cláusula de arbitraje.

Con relación a la ausencia de parte indispensable argüida, la Sra. Reyes Rivera ripostó que Sunnova omitió explicar las razones de cómo los intereses del Sr. Loza Sardiñas, su hermana o alguna sucesión pudiesen verse afectados por el dictamen judicial. Añadió que, de entender que los aludidos deben responder en una acción de nivelación, Sunnova puede

---

SUMAC no surge que se haya sometido documento alguno relacionado con el trámite administrativo. Por consiguiente, estamos impedidos de considerar aquellos anejos atinentes al DACo, presentados inapropiadamente por Sunnova en esta etapa procesal. Es sabido que las normas que rigen los procedimientos apelativos dictan nuestra abstención sobre cuestiones no planteadas en primera instancia. *Scotiabank v. Sucn. Quiñones et al.*, 206 DPR 904, 930 (2021).

[6] Apéndice, págs. 71-90.

traerlos al pleito como terceros demandados, al palio de la Regla 12 de Procedimiento Civil, 32 LPRA Ap. V, R. 12.

El 25 de mayo de 2023, el TPI notificó el dictamen impugnado.[7] Declaró con lugar la *Comparecencia especial solicitando paralización o desestimación sin perjuicio y referido a arbitraje o en la alternativa, desestimación por falta de acumulación de parte indispensable.* Consecuentemente, desestimó sin perjuicio la *Demanda* y remitió la controversia al procedimiento de arbitraje. Insatisfecha, la Sra. Reyes Rivera solicitó infructuosamente la reconsideración de la decisión.[8] El 27 de junio de 2023, el TPI notificó su *Resolución* denegatoria.[9]

No conteste todavía, acudió oportunamente ante este foro intermedio y señaló la comisión de los siguientes errores:

> Erró el Tribunal de Primera Instancia al determinar que las partes pactaron atender sus controversias bajo el método alterno de arbitraje. Esto, a pesar de que la demandante jamás consintió ni compareció en acuerdo alguno con los co-demandados recurridos ni consintió ninguna cláusula de arbitraje.

> Erró el Tribunal de Primera Instancia al no celebrar una vista evidenciaria para que la parte Dermandante-Recurrente tenga oportunidad de probar que, en efecto, nunca compareció en ningún contrato con los co-demandados.

Sunnova y SolarTec presentaron sendos alegatos de oposición. Con el beneficio de la comparecencia de las partes en litigio, podemos resolver.

**II**

**A**

El recurso de *certiorari* es "un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior." *IG Builders v. BBVAPR*, 185 DPR 307, 337-338 (2012); véase, además, *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, págs. 27-28, 211 DPR __ (2023). Al respecto, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.52.1, en lo pertinente, dispone como sigue:

---

[7] Apéndice, págs. 91-92.
[8] Apéndice, págs. 93-101. Refiérase, además, al Apéndice, págs. 102-112.
[9] Apéndice, pág. 24.

.       .       .       .       .       .       .       .       .

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, **el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones** sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros**,** anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación **en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.** Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis nuestro.)

.       .       .       .       .       .       .       .       .

El Tribunal Supremo de Puerto Rico ha reconocido "que ciertas determinaciones interlocutorias pueden afectar sustancialmente el resultado del pleito o tener efectos limitativos para la defensa o reclamación de una parte o conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión de forma inmediata." *Torres González v. Zaragoza Meléndez*, *supra*, pág. 29, que cita a R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, § 5515a, pág. 533.

Como se conoce, la expedición o denegación de un recurso de *certiorari* está sujeta a un análisis dual. Este examen consta de una parte objetiva y otra parte subjetiva. En primer lugar, tenemos que analizar si la materia contenida en el recurso de *certiorari* tiene cabida dentro de una de las materias específicas establecidas en la Regla 52.1 de Procedimiento Civil, *supra*. Superada esta etapa, corresponde analizar si bajo la discreción concedida a este tribunal revisor mediante la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, debemos o no expedir el auto de *certiorari*. A estos fines, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra,* y sirve como guía directiva para determinar si expedimos o no un auto de *certiorari*. *Torres González v. Zaragoza Meléndez*, *supra*, págs. 30-31, que cita a G. Coll Martí y N. Jiménez

Velázquez, *Práctica Apelativa, en Perspectivas en la práctica apelativa: 25 años del Tribunal de Apelaciones de Puerto Rico*, San Juan, Eds. SITUM, 2018, págs. 19-20. Los criterios a seguir y a los que hemos impartido énfasis, son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) **Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración**.
>
> (F) **Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio**.
>
> (G) **Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia**.

De acuerdo con lo dispuesto en la Regla 40, *supra*, debemos evaluar "tanto la **corrección de la decisión recurrida**, así como la **etapa del procedimiento** en que es presentada, a los fines de determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido [o] una dilación injustificada del litigio." (Énfasis nuestro.) *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Recordemos que la discreción judicial "no se da en un vacío ni en ausencia de otros parámetros",[10] sino que como Tribunal revisor debemos ceñirnos a los criterios antes señalados. Si luego de evaluar las referidas guías decidimos no expedir el recurso, podemos fundamentar nuestra determinación, pero no tenemos la obligación de así hacerlo. 32 LPRA Ap. V, R. 52.1. En esencia, "la discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento

---

[10] *IG Builders v. BBVAPR*, 185 DPR 307, 338 (2012) que cita a *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011).

judicial para así llegar a una conclusión justiciera." *Torres González v. Zaragoza Meléndez*, *supra*, pág. 28. Asimismo, este foro revisor está autorizado a intervenir con las determinaciones de las primeras instancias judiciales, cuando "se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que [la] intervención en esa etapa evitará un perjuicio sustancial." *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

**B**

Dispone el Código Civil de 2020, en su Artículo 1230, que "[e]l contrato es el negocio jurídico bilateral por el cual **dos o más partes expresan su consentimiento** en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones." (Énfasis nuestro.) 31 LPRA sec. 9751. El contrato se perfecciona "desde que las partes manifiestan su **consentimiento** sobre el **objeto** y la **causa**." (Énfasis nuestro.) Art. 1237 del Código Civil, 31 LPRA sec. 9771. Una vez convergen los elementos esenciales del contrato, entonces, lo pactado "tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley." Art. 1233 del Código Civil, 31 LPRA sec. 9754. Por tanto, si el contrato es **legal y válido**, los tribunales de justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer. *De Jesús González v. A.C.*, 148 DPR 255, 271 (1999); *Olazábal v. U.S. Fidelity, etc.*, 103 DPR 448, 462 (1975).

Reza el Código Civil de 2020 que "[e]xiste **consentimiento** por el concurso de la **oferta** y de la **aceptación** cuando el oferente recibe la aceptación." (Énfasis nuestro.) Art. 1238 del Código Civil, 31 LPRA sec. 9772. Se entiende por *oferta* aquel "acto jurídico unilateral, **dirigido a una persona determinable**, que contiene los elementos necesarios para la existencia del contrato propuesto, o el medio para establecerlos." (Énfasis nuestro.) Art. 1239 del Código Civil, 31 LPRA sec. 9773. La *aceptación* se define como "el acto jurídico unilateral, puro y simple por el cual **se presta**

**conformidad a una oferta**." (Énfasis nuestro.) Art. 1241 del Código Civil, 31 LPRA sec. 9775.

Como se conoce, "[e]s facultativo contratar o no hacerlo." *Engieneering Services v. AEE*, 209 DPR 1012, 1028 (2022); *PRFS v. Promoexport*, 187 DPR 42, 55 (2012). Es decir, si no existe la **voluntad de obligarse**, o fundamento razonable para concluir que esta existe, no surge un **vínculo contractual**. *Trinidad v. Chade*, 153 DPR 280, 293 (2001); refrendado en *Engieneering Services v. AEE*, *supra*. En todo caso, **ante la ausencia del consentimiento, el negocio jurídico es nulo**. Art. 342 del Código Civil, 31 LPRA sec. 6312.

También se conoce, de ordinario, que las partes prestan su consentimiento mediante sus firmas. La Real Academia Española define *firma* como el "rasgo o conjunto de rasgos, realizados siempre de la misma manera, que identifican a una persona y sustituyen a su nombre y apellidos para aprobar o dar autenticidad a un documento."[11] Por su parte, el Artículo 282 del Código Civil de 2020, 31 LPRA sec. 6174, define la *firma ológrafa* como "el trazo exclusivo de una persona, escrito de su puño y letra con la intención de que se le atribuya la autoría de un acto y la manifestación de su conformidad." "[U]na vez reconocida la firma en juicio o declarada su autenticidad por el juez hace plena fe de su contenido ante su otorgante y sucesores universales…" M. R. Garay Aubán, compilador, *Código Civil de 2020 y su Historial Legislativo: Artículos, Referencias, Concordancias, Notas del Compilador y Memoriales Explicativos*, 2da ed. corregida y ampliada, San Juan, Ediciones SITUM, 2021, T. 1, pág. 419.

Claro está, en respuesta a los adelantos tecnológicos, nuestro ordenamiento ha provisto la viabilidad de las firmas electrónicas. Al respecto, la Ley Núm. 148 de 8 de agosto de 2006, "Ley de Transacciones Electrónicas", 10 LPRA sec. 4081, *et seq.*, que reglamenta las transacciones electrónicas, promulgó una legislación que protege y fomenta el desarrollo de las vías tecnológicas para fines comerciales y, a

---

[11] Real Academia Española, *Diccionario de la Lengua Española*, www.rae.es.

su vez, establece controles para prevenir el fraude y los abusos potenciales. Véase, *Exposición de Motivos*. Abunda el legislador: "Es el propósito de esta Asamblea Legislativa promover y facilitar la participación de Puerto Rico en los mercados nacionales e internacionales; y fomentar el desarrollo de la infraestructura legal necesaria para que nuestros ciudadanos puedan disfrutar, de manera confiable y segura, de los beneficios del comercio electrónico a nivel nacional y global." *Exposición de Motivos*.

Adelante, citamos los incisos 12 y 13 del Artículo 2, 10 LPRA sec. 4081 (12-13), del estatuto, en los cuales se distingue la *firma digital* y la *firma electrónica*:

> .    .    .    .    .    .    .    .
>
> (12) **"Firma digital"** — es **un tipo de firma electrónica que se representa como un conjunto de datos, sonidos, símbolos o procesos en forma electrónica**, creados por una llave privada que utiliza una técnica asimétrica para **asegurar la integridad del mensaje de datos a través de un código de verificación**, así como el **vínculo entre el titular de la firma digital y el mensaje de datos remitido**. En la conversión de un mensaje con firma digital, la persona que tiene el mensaje o comunicación inicial y la llave pública del signatario puede determinar con exactitud si:
>
> i. la conversión se realizó utilizando la llave privada que corresponde a la llave pública del signatario;
>
> ii. el mensaje o comunicación ha sido alterado desde que realizó la conversión.
>
> (13) **"Firma Electrónica"** — es la totalidad de datos en forma electrónica consignados en un mensaje, documento o transacción electrónica, o adjuntados o lógicamente asociados a dicho mensaje, documento o transacción, que puedan ser utilizados para **identificar al signatario e indicar que este aprueba la información recogida en el mensaje, documento o transacción**. (Énfasis nuestro.)

Cónsono con lo anterior, el Código Civil de 2020 acepta que "el consentimiento pueda darse por medios electrónicos". L. Muñiz Argüelles; M. Fraticelli Torres, *et al.*, *El Código Civil de Puerto Rico de 2020: Primeras Impresiones*, Fideicomiso Escuela de Derecho Universidad de Puerto Rico, 2021, pág. 198. A esos efectos, establece lo que sigue:

**Artículo 281. — Instrumento privado; valor probatorio.**[12]

---

[12] 31 LPRA sec. 6173.

> Es instrumento privado el que contiene una **manifestación escrita y firmada de la voluntad de su otorgante**.
>
> **El supuesto otorgante de un instrumento privado a quien se atribuye una firma, debe declarar si es suya o no**, pero sus sucesores deben limitarse a declarar si saben que es la firma de su causante o si no lo saben.
>
> **El reconocimiento de la firma implica el reconocimiento del contenido del instrumento privado**.
>
> El instrumento privado con firma reconocida en un juicio hace plena fe entre sus otorgantes y sucesores universales. (Énfasis nuestro.)

Por tratarse de una manifestación escrita de la voluntad, que no cuenta con la intervención de un funcionario o un notario, el documento privado requiere la firma de su otorgante. Comenta el profesor Gray Aubán que "[e]l reconocimiento de firma puede ser espontáneo o provocado en juicio, y abarca también la atribución judicial de la firma." Añade que **el supuesto firmante debe declarar si la firma le pertenece**. M. R. Garay Aubán, *op. cit.*, págs. 418-419.

**C**

Como corolario del principio de libertad contractual, se creó el arbitraje como un mecanismo flexible de disolución de disputas mediante el cual las partes **voluntariamente** delegan el manejo y fin de estas en una tercera persona imparcial: el árbitro. De este modo, "dos o más partes pueden convenir por escrito en someter a arbitraje cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio o de cualquier controversia futura." *Constructora Estelar v. Aut. Edif. Pub.*, 183 DPR 1, 32 (2011). A esos fines, el Artículo 1 de la "Ley de Arbitraje Comercial en Puerto Rico", Ley Núm. 376 del 8 de mayo de 1951, 32 LPRA sec. 3201, *et seq*, dispone que "[t]al convenio será válido, exigible, e irrevocable **salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio**." (Énfasis nuestro.)

Así pues, el arbitraje es una figura inherentemente contractual que **se puede exigir únicamente cuando se ha pactado y ello consta por escrito**. *Constructora Estelar v. Aut. Edif. Pub.*, *supra*, pág. 32. Por consiguiente, si bien existe una vigorosa política pública a favor

del arbitraje como método alterno para la solución de disputas, **no se puede compeler a una parte a someterse a un proceso de arbitraje si así no lo ha pactado**. *H.R., Inc. V. Vissepó & Diez Constr.*, 190 DPR 597, 605 (2014). Por lo dicho, ante la existencia de una controversia en torno a si las partes están obligadas a participar en el acuerdo de arbitraje, estas tienen el derecho de acudir a los tribunales. Art. 4 de la Ley de Arbitraje, 32 LPRA sec. 3204. Por ello, una de las controversias que las partes sí tienen derecho a dirimir ante los tribunales es aquella relacionada a la obligación de arbitrar. *Id.* "[L] a determinación de si un acuerdo crea el deber de las partes de arbitrar una controversia en particular es tarea judicial." *S.L.G. Méndez Acevedo v. Nieves Rivera*, 179 DPR 359, 367 (2010).

**III**

La Sra. Reyes Rivera aduce que el TPI incidió al referir la disputa sobre la alegada falsificación de su firma e iniciales al procedimiento de arbitraje, sin antes celebrar una vista en la que pueda demostrar que nunca fue parte del *Contrato*. Sunnova y SolarTec, de otro lado, parten del planteamiento de la validez de las firmas electrónicas y digitales, lo que no está en controversia, e invocan la doctrina de separabilidad de las cláusulas de arbitraje, lo que aplica solamente si media un acuerdo consentido. En sus escritos, los recurridos hacen una adjudicación *a priori* de que la firma y las iniciales en el contrato pertenecen, sin más, a la Sra. Reyes Rivera. Sobre esa premisa, arguyen acerca del "pacto" a arbitrar las controversias. Sin embargo, ambos litigantes hacen abstracción de las alegaciones de la *Demanda*, las cuales versan precisamente sobre la falta de consentimiento de la peticionaria por causa de la presunta falsificación de su firma e iniciales en el *Contrato*, así como que no tiene relación con la titularidad del inmueble recipiente del servicio. Incluso, Sunnova niega la naturaleza extracontractual de la causa, basándose en que la relación entre las partes es contractual.

Según reseñamos, el consentimiento es un elemento *sine qua non* para la existencia de un negocio jurídico. El ordenamiento provee para que

ese consentimiento pueda prestarse mediante una firma electrónica o digital, salvaguardando que una parte no queda vinculada si su firma ha sido falsificada. Conforme lo esbozado, el ordenamiento civil dispone que la firma es la manifestación escrita de la voluntad de un contratante. Si se imputa el haber consentido mediante su firma, el presunto otorgante debe declarar si, en efecto, la firma es o no suya. Véase, 31 LPRA sec. 6173. Cuando el otorgante reconozca haber firmado o se pruebe que este firmó, entonces, queda obligado por el contrato, toda vez que "[l]a firma es componente inexcusable en el instrumento privado" y cumple dos funciones: demostrar voluntad e imputar autoría.[13]

Esa es la cuestión principal. ¿Firmó o no el *Contrato* la Sra. Reyes Rivera o, por el contrario, la firma e iniciales fueron falsificadas? La disyuntiva es una cuestión de prueba. Para su adjudicación, el TPI dirigió la resolución de esa controversia al foro arbitral aun cuando, tomándose por correctas las alegaciones de la *Demanda*, todavía no controvertidas, ciertamente la Sra. Reyes Rivera no estaría vinculada por ninguna de las cláusulas contractuales, incluyendo las que confieren competencia al foro arbitral, por más amplias que estas sean. Ello así, porque la peticionaria impugnó el consentimiento, un elemento esencial de la contratación, relacionado con la existencia misma de la totalidad del acuerdo. Al tenor de lo anterior, sostiene que no es parte contratante.

¿Debe dirimirse en primera instancia la aludida impugnación? Respondemos en la afirmativa y concluimos que el TPI erró al referir a arbitraje la validez o invalidez del consentimiento de la peticionaria. El arbitraje, por su naturaleza contractual, tiene que ser consentido por los otorgantes. No se puede exigir a una parte que someta a arbitraje cualquier disputa si no ha aceptado dicho procedimiento. De hecho, la autoridad de los árbitros para resolver controversias nace del acuerdo de sumisión de los contendientes. Véase, *AT&T Techs. V. Communs. Workers of Am.*, 475

---

[13] M. R. Garay Aubán, compilador, *Código Civil de 2020 y su Historial Legislativo: Artículos, Referencias, Concordancias, Notas del Compilador y Memoriales Explicativos*, 2da ed. corregida y ampliada, San Juan, Ediciones SITUM, 2021, T. 1, pág. 419.

US 643, 648-649 (1986); American Arbitration Association, *Commercial Arbitration Rules and Mediation Procedures*, efectivas desde el 1 de septiembre de 2022.[14] Asimismo, no se debe considerar por pactado un acuerdo de arbitraje cuando la alegación principal de una parte es que nunca compareció ni consintió contrato alguno y, para hacer valer sus derechos, acudió al foro judicial.

Con relación a la vista que solicita la Sra. Reyes Rivera, examinemos a *Fabián v. Renovate America, Inc.*, 42 Cal.App.5th 1062 (2019). En ese caso, la señora Rosa Fabián presentó una queja contra Renovate. Alegó que, sin ella solicitarlo, Renovate la llamó por teléfono en torno a un acuerdo de financiamiento de unos paneles solares. Fabián aseguró que no firmó física ni electrónicamente por DocuSign el referido acuerdo. Sostuvo que su firma electrónica fue colocada en el contrato sin su consentimiento, autorización o conocimiento. No obstante, Renovate incorporó los pagos de los paneles a su préstamo hipotecario.

Trabada la controversia, por virtud de las cláusulas contractuales, Renovate peticionó que la disputa se dirimiera mediante arbitraje. Luego que las partes participaron del descubrimiento de prueba, el Tribunal celebró una vista y denegó la solicitud de Renovate. La empresa apeló el dictamen y el foro revisor confirmó. Este concluyó que Renovate, más allá de sus propias declaraciones, no demostró por preponderancia de la prueba que Fabián firmó electrónicamente el contrato en cuestión. En particular, Renovate no autenticó la firma, al no ofrecer detalles específicos sobre las circunstancias que rodearon el alegado consentimiento; ni hizo ninguna referencia a DocuSign o al proceso utilizado para obtener y verificar las iniciales y la firma digital de Fabián o sobre cómo se verificó la identificación de la signataria como la persona que realmente firmó el contrato. *Fabián v. Renovate America, Inc.*, *supra*, págs. 1069-1070.

En la causa presente, como en *Fabián*, fue cuestionada la legitimidad de la firma y las iniciales plasmadas en el *Contrato*, lo que

---

[14] Acceder en www.adr.org/commercial.

implica la no aceptación de ninguna de sus cláusulas, incluyendo aquellas que remiten a arbitraje la resolución de disputas. Somos del criterio que es al TPI al que le compete, en primera instancia, pasar juicio para determinar si la firma electrónica o digital que aparece en el *Contrato* fue realizada o no por la Sra. Reyes Rivera y, por ende, la vincula o no al cumplimiento de las obligaciones contenidas en la letra del acuerdo, incluyendo el arbitraje.

En suma, al examinar la totalidad de las circunstancias del caso y los hechos bien alegados en la *Demanda*, los cuales no han sido controvertidos, y en aras de evitar un fracaso de la justicia, resolvemos que el TPI debe justipreciar, a base de la preponderancia de la prueba, la controversia de si la firma e iniciales en el *Contrato*, en efecto, fueron o no falsificadas. Nótese que este caso no versa sobre un contrato firmado por sus otorgantes, que posteriormente es impugnado por una de las partes por vicios en el consentimiento. Aquí tampoco se disputan asuntos sobre el servicio, mantenimiento, reparación, facturación, etc., ya que la Sra. Reyes Rivera asevera que no reside en el inmueble en el que se instalaron los paneles solares. Tales situaciones serían materia de arbitraje si así se hubiera pactado. Por el contrario, este caso se asienta en unas alegaciones plausibles acerca de la inexistencia de un contrato por ausencia de consentimiento, debido a la alegada falsificación de la firma y las iniciales de la peticionaria. Como mencionamos, la intervención de un árbitro descansa en la voluntariedad de las partes y, ante la presunta ausencia de un pacto válido, no procede ventilar la disputa ante el trámite alterno de resolución de conflictos. Incluso, el *Contrato* establece que "[e]l árbitro no adjudicará la compensación a favor o en contra de cualquier persona que no sea parte."[15]

Recuérdese también que, ante una solicitud fatal de desestimación, el tribunal debe "considerar si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida." *Pressure Vessels P.R. v.*

---

[15] Apéndice, pág. 55, acápite 18.

*Empire Gas P.R.*, 137 DPR 497, 505 (1994). Al realizar este examen, opinamos que la desestimación tuvo el efecto de privar a la Sra. Reyes Rivera de su día en corte para hacer valer sus contenciones. La decisión que revocamos no es acorde con la política pública judicial inclinada a favorecer que los casos se ventilen en sus méritos. Véase, *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 298 (2012). Al fin y al cabo, nuestra autoridad emana del "elemental principio de que los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen interés real en obtener un remedio que haya de afectar sus relaciones jurídicas." *E.L.A. v. Aguayo*, 80 DPR 552, 558-559 (1958).

**IV**

Por los fundamentos expuestos, se expide el auto de *certiorari* y se revoca la determinación judicial impugnada. En consecuencia, se devuelve el caso ante el Tribunal de Primera Instancia y se ordena la celebración de una vista evidenciaria para dirimir únicamente la legitimidad o no de la firma e iniciales de la Sra. Maribel Reyes Rivera en el *Contrato de Compra de Energía o PPA*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones